UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL BARD,<br><br>    Plaintiff,<br><br>v.<br><br>BOSTON SHIPPING ASSOCIATION –<br>INTERNATIONAL LONGSHOREMEN'S<br>ASSOCIATION PENSION PLAN,<br>a/k/a BSA-ILA PENSION PLAN,<br>a/k/a BSA-ILA TRUST FUND,<br><br>    Defendant, | CIVIL ACTION<br><br>NO. 04-11946-NMG |

### PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to F.R.C.P. Rule 65(b), Plaintiff requests a Temporary Restraining Order precluding the BSA-ILA Pension Plan ("Plan") and Trust ("Trust") from proceeding in arbitration as scheduled on Monday, December 20, 2004 at 10:00 A.M. or thereafter unless and until this Court determines that arbitration is necessary under the terms of the Plan and Trust documents.  In support hereof, Plaintiff states as follows:

    1.  This case is about the non-payment of disability pension benefits by a Plan that is sponsored and jointly administered by the employer, Boston Shipping Association, Inc. ("BSA") and the International Longshoremen's Association Union ("Union" or "ILA").

    2.  The Union represented Mr. Bard while Mr. Bard was an employee of BSA.

3. About the time of Mr. Bard's termination from employment, the Union advised Mr. Bard to forego applying for benefits under the BSA-ILA Pension Plan until after Mr. Bard had a Social Security Administration's determination of disability.

4. The Union advised Mr. Bard to first obtain a determination of disability from the Social Security Administration, and then he could then use this determination to apply for disability benefits under the BSA-ILA Plan.

5. Mr. Bard applied for, and awaited, a determination of disability from the Social Security Administration, which he finally obtained a couple years later.

6. Mr. Bard then applied for disability benefits under the BSA-ILA Plan, and the denial of such benefits, together with the procedure of which followed (described fully in the complaint), are the basis of the lawsuit herein.

7. After his termination from employment, Mr. Bard could no longer afford to pay Union dues, nor sought the benefits of the Union, and thereafter the Union terminated Mr. Bard's membership.

8. The Union represented to Mr. Bard that it was not representing Mr. Bard in this pursuit of his benefits under the Plan. Counsel for Mr. Bard asked Mr. Bard to check to make sure that he was no longer represented by the Union, and Mr. Bard checked and confirmed this.

9. Mr. Bard does not want the Union to represent him, as is no longer an employee of BSA, no longer in the Union, and further, is uncertain as to whether the Union currently has a committed interest in helping him given his current status. A conflict of interest may exist, in that the Union shares office space in the same location as the employer and various employees, and the Union may generally operate to protect its

most senior employees as opposed to, or at the expense of, a non-employee, non-union member.

10. A complaint was filed in this case on September 7, 2004.

11. That the complaint was served on or about the same day by sending such by certified receipt requested.

12. That no receipt for delivery was returned, but counsel for the Plan, Murphy, Hesse, Toomey & Lehane, LLP, accepted service of the Complaint on September 22, 2004. See Exhibit A attached.

13. That in his letter of September 22, 2004, Counsel for the Plan requested a stay of the federal suit, pending the resolution of a tie vote of the plan by arbitration.

14. That Plaintiff's counsel agreed to take some time to consider whether it would consent to such, and meanwhile, given time, the tie vote may be broken (leaving no argument with respect to a failure to exhaust administrative remedies). Plaintiff's counsel never consented to such, but supplied time for the tie vote to be broken.

15. That Counsel for the Plan had made reference to Section 13.1 of the Plan provisions regarding tie votes and the right to the appointment of a third party umpire (included in the document filed with the complaint entitled "Administrative Record.")

16. That Plaintiff's counsel granted extensions to Plan Counsel to file a response to the complaint, for the purpose of the Plan breaking a tie vote by the said mechanism.

17. That the Plan provides for a third person as umpire to break a deadlock, but does not refer to arbitration.

18. That on December 2, 2004 E. David Wanger, Esq. of Angoff, Goldman,

3

Manning, Wanger & Hynes, P.C. wrote a letter to Plaintiff, whereby he stated that it represented the International Longshoremen's Association ("ILA"), and that the ILA "had attempted without success to reach Mr. Bard." See Exhibit B attached.

19. That, by the context of the letter, it appeared that the ILA was of the position that it was going to represent Mr. Bard at the scheduled arbitration. Mr. Bard's consent to participation, together with Union representation, could be considered consent, and a waiver of rights, by Mr. Bard with respect to appealability of any award rendered, and Plaintiff's counsel expressed such concern to Attorney Wanger.

20. Attorney Wanger stated that either his firm or Plaintiff's counsel, if it wanted to, could represent Mr. Bard at the arbitration proceedings. Attorney Wanger was unable to make representations as to the bindingness of such an arbitration award.

21. That Plaintiff's counsel, at the time, was unable represent Mr. Bard at such an arbitration hearing because it had to be available for five motions in another court on the same date (which changed yesterday), and further, Plaintiff's counsel does not know the ground rules of the procedure, nor the substantive rights, and given the complexity of the issues, could not adequately prepare for such a procedure on such short notice. This is in addition to its concerns about waiver of Mr. Bard's rights.

22. That Plaintiff's counsel thereafter attempted to research when arbitration is required in jointly administered ERISA plans, and discovered that it is usually only required by collective bargaining agreements, entered into by Union representatives. That Plaintiff's counsel, after request for all documents relied upon by the Plan in making its decisions with respect to Mr. Bard's benefits, had not been provided with a copy of any collective bargaining agreements.

4

23. That on December 13, 2004, Plaintiff's counsel drafted and circulated to the Plan's attorney, and the Union's attorney, a letter stating Plaintiff's counsel represented Mr. Bard, not the Union, that Mr. Bard does not consent to be bound by an arbitration award, and that if it is the intent of the parties to bind Mr. Bard (as opposed to the Trustees against each other), without right to appeal to the federal court, that the arbitration hearing be postponed providing time for the federal court, upon request, to determine whether Mr. Bard must submit to binding arbitration, or else get written assurance that the arbitration does not bind Mr. Bard, and does not preclude him from going to federal court for appeal. See Exhibit C attached.

24. On December 14, 2004 the Union's counsel stated that the Union's participation was limited to the capacity as acting as trustees of the Board, and not as a representative of Mr. Bard.

25. Union's counsel then sent the attached letter, which it read to Plaintiff's counsel by phone before sending, where it is asserts that Mr. Bard "confirms" no objection to ILA Trustees participation, and "confirms" that it will not release the ILA Trustees, pursuant to the trust documents. With respect to the "participation" issue, the Plan and Trust provide for an appointment of a third party umpire, and with respect to the "release" issue, the Plan provides a limitation of liability for Trustees that participate in voting. Plaintiff's counsel does not fully understand the purposes of the letter, as the trust documents speak for themselves. But no representation is made as to whether an award is binding. See Exhibit D attached.

26. On December 15th, another Counsel sent a letter stating that it represented "the Boston Shipping Association", as opposed to Trustees of the Plan, and that an

5

arbitration was scheduled for December 20th, and that the letter sent to Plan's counsel was forwarded to BSA's counsel, and that "The Trustees are deadlocked within the meaning of the Trustees Plan and arbitration is the method of resolution." See Exhibit E attached.

25. On December 16th, in response to Plaintiff's counsel's inquiries, the Plan's Attorney, informed Plaintiff's counsel that he could not defer the arbitration hearing set for Monday, December 20th; that he did not have the authority to defer such; that *he did not know for sure whether any decision rendered was binding on Mr. Bard*, but that he did not think so; and that Plan's counsel should get in touch with Union's counsel, *as the Union will be representing Mr. Bard in the said proceeding*. Plan's counsel was also going to try to write a letter by the end of the day evidencing his understanding that the arbitration award would not be binding on Mr. Bard, nor non-appealable, but no letter was received by Plaintiff's counsel.

28. According to correspondence in the attachments to Mr. Bard's complaint, an arbitrator's decision exists regarding "eligibility" to apply for plan benefits, of which was used to decide a prior BSA employee's rights to disability benefits upon termination, and Mr. Bard heard from co-workers at his employer that the participant was precluded from appealing the denial of his eligibility due to his participation in binding arbitration. Mr. Bard does not consent to participation in a binding arbitration award, unless he is required to do so by collective bargaining documents or other agreements between the Union and the employer, which would be contrary to the Plan documents, of which entitle him to federal court review. Nor does Mr. Bard want to waive his rights to argue that the Plan has already exhausted its administrative remedies.

28. The Plan's Administrator was unable to provide this arbitration decision to

Plaintiff's counsel upon verbal request in August, 2004, and currently, the Union's attorney is unable to supply this decision to Plaintiff's counsel; the employer nor Plan nor Union has supplied this decision or any collective bargaining rights or information, and Mr. Bard has no idea as to what is involved in consenting to participate in the upcoming scheduled arbitration, but does not desire to risk Mr. Bard's rights.

30. Plaintiff had already exhausted administrative remedies according to the terms of the Plan and Trust at the time it filed suit (see Complaint), and Mr. Bard does not consent to a binding arbitration decision, or otherwise, to a release of its claim in this lawsuit that administrative remedies have been exhausted, it merely allowed the plan more time to resolve its deadlock informally.

31. The Plaintiff has a likelihood of success on the merits of this case (see Complaint), but will be irreparably harmed if he is enjoined from attacking a binding arbitration award due to his "deemed" appearance by Union representation, of which he does not consent to.

31. If the arbitration procedure is required, its deference to a later date harms only the Plaintiff, in that an award of his benefits is delayed. The hearing can be rescheduled with no harm to the Plan. Therefore, Plaintiff argues that no security should be required to support the relief requested herein.

WHEREFORE, Mr. Bard respectfully requests that this Court:

1. Temporarily restrain, and preliminary enjoin, the BSA-ILA Trust from pursuing arbitration as a means of resolving Mr. Bard's rights until it is first

determined by this Court as to whether such is required by the Plan and Trust documents;

2. Provide a deadline date by which Defendant must file his response to the complaint;

3. Make a determination on the issues raised herein only after, and if such need to be addressed as a consequence of the response filed by the Defendant.

December 17, 2004

*/s/ Robert E. Daidone*
Robert E. Daidone, Esq.
BBO# 544438
100 State Street
10th Floor
Boston, MA 02109
(617) 722-9310

## CERTIFICATE OF SERVICE

The above Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction was sent by fax to Geoffrey P. Wermuth, Esq. of Murphy, Hesse, and Lehane, LLP by fax at (617) 479-6469 on this 17th day of December, 2004, and notification of the sending of such fax was confirmed by telephone call on this same date.

December 17, 2004

*/s/ Robert E. Daidone*
Robert E. Daidone, Esq.
BBO# 544438
100 State Street
10th Floor
Boston, MA 02109
(617) 722-9310

"A"

# MURPHY, HESSE, TOOMEY & LEHANE, LLP
## Attorneys At Law

CROWN COLONY PLAZA
300 CROWN COLONY DRIVE, SUITE 410
P.O. BOX 9126
QUINCY, MA 02269-9126
TEL: (617) 479-5000   FAX: (617) 479-6469

WORLD TRADE CENTER EAST
TWO SEAPORT LANE
BOSTON, MA 02210
TEL: (617) 479-5000   FAX: (617) 338-1324

ONE MONARCH PLACE, SUITE 1310R
SPRINGFIELD, MA 01144
TEL: (800) 227-6485   FAX: (617) 479-6469

Arthur P. Murphy
James A. Toomey
Katherine A. Hesse
Michael C. Lehane
John P. Flynn
Regina Williams Tate
Edward F. Lenox, Jr.
Mary Ellen Sowyrda
David A. DeLuca
Ann M. O'Neill
Michael F.X. Dolan, Jr.
Donald L. Graham
Andrew J. Waugh
J. David Moran
Doris R. MacKenzie Ehrens
Mary L. Gallant
Robert M. Delahunt, Jr.
Lorna M. Hebert

Geoffrey P. Wermuth
Joseph T. Bartulis, Jr.
Clifford R. Rhodes, Jr.
Kathryn M. Murphy
Scott E. Bettencourt
Stacey G. Bloom
Michael R. Bertoncini
Adam D. Janoff
Thomas W. Colomb
Monica Swanson Tesler
David A. Appugliese
Rebecca L. Andrews
Jennifer N. Geosits
Bryan R. LeBlanc
Kimberly A. Mucha
Jason M. Gesing
Christina Gentile
Beth Leopold Ross

Of Counsel
Paul F. Dempsey
William P. Breen, Jr.

Scott Harshbarger

*Please Respond to Boston*

September 22, 2004

Robert E. Daidone, Esq.
100 State Street
10th Floor
Boston, MA 02109

RE:   Bard v. BSA-ILA Pension Plan, USDC CA No. 04-11946-NMG:

Dear Attorney Daidone:

Thank you for taking the time to discuss this case with me today. As we agreed, I will accept service of the Complaint effective today. Thus the current time for filing an Answer to the Complaint is October 12, 2004. You also appeared to indicate some willingness to extend that time if necessary. We also discussed my proposal to stay the case pending arbitration, which you agreed to take some time to consider. I also agreed to let you know as soon as possible when the arbitration was scheduled.

Thank you for your consideration in this matter, and if you have any questions please give me a call.

Very truly yours,

Geoffrey P. Wermuth

GPW\ms
cc:   David Appugliese, Esq.
      Richard Meyer, Esq.

# ANGOFF, GOLDMAN, MANNING, WANGER & HYNES, P.C.

E. DAVID WANGER
J. F. McMAHON
PAUL T. HYNES

COUNSELLORS AT LAW
45 BROMFIELD STREET
FLOORS 8 & 9
BOSTON, MASSACHUSETTS 02108-4106

(617) 723-6500
FACSIMILE: (617) 742-1015

SAMUEL E. ANGOFF
(1923-1978)
SIDNEY S. GRANT
(1929-1987)

OF COUNSEL

ALBERT L. GOLDMAN
ROBERT D. MANNING

VIA FAX: 617-523-8352
CERTIFIED MAIL – RETURN RECEIPT REQUESTED
# 7000 2870 0000 6625 2188

December 2, 2004

Robert E. Daidone, Esq.
100 State Street – 10th Floor
Boston, MA 02109

RE: B.S.A./I.L.A. Pension Plan - Paul Bard - Trustee Deadlock
(Our File# 352-2004)

Dear Sir:

This law firm represents the International Longshoremen's Association local unions in the Port of Boston and vicinity.

Upon deadlocked vote by trustees of the BSA-ILA Pension Plan, the issue of Mr. Bard's entitlement to apply for disability pension is proceeding to arbitration. Hearing now is scheduled for December 20, 2004.

The ILA has attempted without success to reach Mr. Bard. Thus, I am corresponding with you.

Please provide me with all medical and other documents relied upon by Mr. Bard in terms of his claim of disability, including, of course, information as to the occurrence of disability prior to Mr. Bard's discharge.

Please advise if Mr. Bard has any concerns regarding the ILA's participation in the arbitration.

Given the proximity of hearing, I would appreciate an expedited, substantive respnse to the foregoing.

Very truly yours,

E. David Wanger

EDW\pf
cc: Jim Langan, ILA

**LAW OFFICES OF**
**ROBERT E. DAIDONE**
100 STATE STREET
10TH FLOOR
BOSTON, MA 02109
(617) 722-9310
(617) 523-8352 (FAX)

CERTIFIED – RECEIPT REQUESTED

AND VIA FAXES: (617) 479-6469 & (617) 742-1015

December 13, 2004

Geoffrey P. Wermuth, Esq.
Murphy, Hess, Toomey & Lehane, LLP
300 Crown Colony Drive, Suite 410
Quincy, MA 02269-9126

E. David Wanger, Esq.
Angoff, Goldman, Manning
   Wanger & Hynes, P.C.
45 Bromfield Street
Floors 8 & 9
Boston, MA 02108-4106

RE: Paul Bard v. BSA-ILA Pension Plan
    U.S. District Court C.A. No. 04-11946-NMG

Dear Attorneys Wermuth and Wanger:

    On December 4, 2004, we received notice from Attorney Wanger, representative of the International Longshoremen's Association ("ILA"), of an arbitration to be held on December 20th regarding resolution of a "trustee deadlock" on Paul Bard's "entitlement to apply for disability pension" under the BSA-ILA Pension Plan ("Plan"). In addition to informing us of the arbitration, the we were asked if we had issues with "ILA's participation in the arbitration."

    . This letter is intended to address that question, as well as other issues with respect to the abovementioned proceeding.

    With regard to the "ILA's participation in the arbitration", we presume that such refers to an offer by ILA ("the Union") to represent Mr. Bard at the arbitration hearing of December 20, 2004. Mr. Bard had informed us that he longer represented by the Union. He was informed by the Union that he would no longer be in the Union after discontinuance of payment of Union fees (which he discontinued) about the year 2001, and he was told again this year that he was not

being represented by the Union with respect to the ERISA benefits involved in the abovementioned case.

We currently represent Mr. Bard with respect to his pursuit of his ERISA benefits, and in the abovementioned federal case pending in the U.S. District Court. As the present time, Mr. Bard does not desire to change this representation unless the U.S. District Court determines that the matter before us has to be arbitrated, and Mr. Bard has to be represented, in which case we reserve further discussion of this matter.

While we understand that the Board of Trustees for the Plan is resorting to arbitration to resolve its decision with regard to Mr. Bard's benefits, Mr. Bard does not consent, expressly or impliedly, to labor arbitration on any matters pending before the Board of Trustees. Mr. Bard takes the position that any decision of the Board of Trustees, while possibly binding on such Trustees as against themselves, would not be binding on Mr. Bard. According to the documents Mr. Bard received pursuant to request, he is entitled to have his ERISA plan benefits' issues determined by federal court, if he does not agree with the decision of the BSA-ILA Plan ("Plan"). It might be pointed out that we, as counsel to Mr. Bard, had tendered request to the Plan for all documents relied upon in deciding the matter of the Plan's benefits, and no documents tendered to us by the Plan (which are all included in our "Administrative Record" filed with the case), state that Mr. Bard's benefits are to be determined by arbitration that is binding on Mr. Bard (we note, however, that the Board trustees may resolve its own internal deadlock by using an umpire).

Attached to Attorney Wanger's copy of this letter herein, and pursuant to Attorney Wanger's request, is an "Administrative Record" that was attached to our complaint filed in the federal court.

We would object to allowing more time to file an answer by the Plan in the federal proceeding, *if the Plan's position is* that the arbitration that is being pursued by the Board of Trustees, is intended to be binding on our client, with our client having no rights to appeal an denial of benefits to the federal court. Such an interpretation would be counter to the rights delineated in the documents that the Plan sent to our Mr. Bard, and upon which our Mr. Bard has relied. If, on the other hand, the Trustees find arbitration helpful amongst themselves, in order to decide what position *they* will take, with no intent to bind Mr. Bard to any such decision, we have no say as to what the Trustees do. But we believe that the Plan has surpassed the time required for "exhaustion of administrative remedies," and unless the Plan awards the claimed benefits, we have no choice than to exercise all of our rights, including the right to argue that Mr. Bard has exhausted all of his administrative remedies.

Mr. Bard has freely given the Plan time to file an answer to the complaint that he filed, to further exhaust administrative remedies, even though such have already been exhausted. After Mr. Bard's appeal to the Board of Trustees, and after several months, the Plan has still failed to award the benefits that Mr. Bard is due.

As stated above, Mr. Bard has given more time for the Plan to answer the complaint, hoping that the Plan would decide whether it was going to award Mr. Bard his benefits, but with us specifically communicating to Attorney Wermuth, as Plan counsel, that Mr. Bard would not consent to anything procedurally, including the grant of an extension for an unknown length of time that it may take for the Board of Trustees to render its final decision. We agreed that we would not bring a motion for default by the dates we agreed to (which have passed some time ago). Nor is it our intent to file a motion for a default at this immediate date (unless the Plan refuses to accommodate Mr. Bard by rescheduling the hearing date), but again, we would like to

make it clear that Mr. Bard does not consent to arbitration as a way for *him* to resolve this matter. If the Board of Trustees wants to resolve its Trustees' differences using an umpire that they so choose, we cannot unilaterally stop it. Mr. Bard, however, does not agree to be bound by any such decision.

Mr. Bard would, of course, accept the benefits due him if offered by the Plan, and the payment of such benefits would obviously avoid the need for further litigation. The hope is that the Plan would decide to provide such benefits.

If it is the intent of the Plan to claim that any decision of the Board of Trustees is a binding decision on Mr. Bard – as opposed to merely a binding decision amongst the Trustees on the Board – we ask that the Plan defer the arbitration hearing otherwise scheduled for December 20th to a later date, pending the federal court's resolution of whether binding arbitration is the manner by which the ERISA benefits are to be resolved, which we would raise prior to such hearing. Meanwhile, we would ask that the Plan file its response to the complaint in the immediate future (and by mutual agreement).

Mr. Bard does not desire to forego his rights to appeal in federal court by failure to object to arbitration as a course of procedure to decide his ERISA benefits.

By writing this letter, we do not intend to waive any of Mr. Bard's rights, whether mentioned or not in this letter, and we hereby reserve any and all rights that Mr. Bard has with respect to his ERISA benefits.

Thank you kindly.

Sincerely,

Robert E. Daidone

cc: Paul Bard

# ANGOFF, GOLDMAN, MANNING, WANGER & HYNES, P.C.

E. DAVID WANGER
J. F. McMAHON
PAUL T. HYNES

COUNSELLORS AT LAW
45 BROMFIELD STREET
FLOORS 8 & 9
BOSTON, MASSACHUSETTS 02108-4106

(617) 723-5500
FACSIMILE: (617) 742-1015

SAMUEL E. ANGOFF
(1929-1978)
SIDNEY S. GRANT
(1929-1967)

OF COUNSEL

ALBERT L. GOLDMAN
ROBERT D. MANNING

Fax and Mail:   617-523-8352

December 14, 2004

Robert E. Daidone, Esq.
100 State Street – 10th Floor
Boston, MA 02109

RE: BSA-ILA Pension Plan
Trustee Deadlock: Paul Bard
(Our File# 352-2004)

Dear Mr. Daidone:

My letter confirms that Mr. Bard does not object to the ILA Trustees' participation pursuant to the trust documents in the upcoming deadlock arbitration. It also confirms that Mr. Bard will not release the ILA Trustees of any claims related to their participation.

The arbitration will proceed on the date scheduled. Please confirm that you have furnished this office with all relevant documents and information supporting a finding that he became disabled while actively employed as a longshoreman. Please also advise if Mr. Bard plans on attending the hearing and, if so, does he wish to testify.

Please respond as soon as is convenient.

Very truly yours,

John F. McMahon
JFM\pf
cc: E. David Wanger, Esq.

74

"E"

## MORGAN, BROWN & JOY, LLP
### ATTORNEYS AT LAW
ONE BOSTON PLACE
BOSTON, MASSACHUSETTS 02108-4472

PHILIP G. BOYLE
pboyle@morganbrown.com

TELEPHONE
(617) 523-6666
FACSIMILE
(617) 367-3125

December 15, 2004

**Delivery via Facsimile and U.S. Mail**

Robert E. Daidone
100 State Street
10th Floor
Boston, MA 02109

Re:   BSA-ILA Pension Trust—Paul Bard Trustee Deadlock

Dear Mr. Daidone:

I represent the Boston Shipping Association in the arbitration scheduled for Monday, December 20, 2004. Your letter to Geoffrey Wermuth of December 13, 2004, has been forwarded to me. The issue for the arbitrator is whether Mr. Bard is eligible to apply for a disability retirement under the Pension Plan. The employer asserts he is not. The Trustees are deadlocked within the meaning of the Trustees Plan and arbitration is the method of resolution.

The hearing is at my office and it begins at 10:00 a.m. Mr. Bard is welcome to attend.

Very truly yours,

Philip G. Boyle

PGB/kmc

cc:   Richard Meyer, Esq.
      David Wanger, Esq.
      Geoffrey Wermuth, Esq.

≈AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of **MASSACHUSETTS**

PAUL BARD,
Plaintiff

v.

BOSTON SHIPPING ASSOCIATION -
INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION PENSION PLAN,
a/k/a BSA-ILA PENSION PLAN
a/k/a BSA-ILA TRUST FUND,
Defendant

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER: **04 11946 NMG**

TO: (Name and address of Defendant)

BOSTON SHIPPING ASSOCIATION - INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION PENSION PLAN
197 8th STREET
SUITE 775
CHARLESTOWN, MA 02129-4208

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

ROBERT E. DAIDONE, ESQ.
100 STATE STREET
10th FLOOR
BOSTON, MA 02109

an answer to the complaint which is served on you with this summons, within ____20____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

TONY ANASTAS

CLERK



SEP 08 2004

DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE SEPTEMBER 10, 2004 |
| NAME OF SERVER (PRINT) CERTIFIED MAIL | TITLE CERTIFIED MAIL |

Check one box below to indicate appropriate method of service

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☒ Other (specify): Certified Mail 7003-3110-0001-4664-2716 Service Accepted by Defendant's Counsel, Murphy, Hess, Toomey + LeHane, LLP by letter dated September 22, 2004

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on 12/17/04
_____
Date

Signature of Server

Robert E. Daybone, ESQ.
100 State St., 10th Floor
Boston, MA 02109

Address of Server

---

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.