UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

PAUL BARD,                                    )
                                              )
          Plaintiff,                          )          CIVIL ACTION
                                              )
v.                                            )          NO. 04-11946-NMG
                                              )
BOSTON SHIPPING ASSOCIATION –                 )
INTERNATIONAL LONGSHOREMEN'S                   )
ASSOCIATION PENSION PLAN,                      )
a/k/a BSA-ILA PENSION PLAN,                    )
a/k/a BSA-ILA TRUST FUND,                      )
                                              )
          Defendant,                          )
_____)


PLAINTIFF, PAUL BARD'S,
CONSENTED TO MOTION TO AMEND COMPLAINT


        NOW COMES Plaintiff, Paul Bard, and moves under F.R.C.P. 15, to amend his

complaint.  In support thereof, Mr. Bard states that the Defendant, the BSA-ILA Plan, has

consented to allowance of Plaintiff to amend his complaint without contest.   Plaintiff

submits the Verified Second Amended Complaint attached.  In further support, Plaintiff

states that:


        1.   That no new factual allegations are made in the proposed amended complaint; but

             that the second amended complaint is verified.


        2.   That under the Verified Second Amended Complaint submitted herewith, Plaintiff

             merely adds Counts III and IV, and seeks additional remedies.

3.  All other allegations and Counts remain the same as the prior Amended

Complaint.


July 7th, 2005


PAUL BARD,
By His Attorney,


_____
Robert E. Daidone, Esq.
BBO# 544438
44 School Street
Suite 500
Boston, MA  02108
(617) 722-9310


CERTIFICATE OF SERVICE


I, Robert E. Daidone, Esq. hereby certify that I served a copy of the PLAINTIFF, PAUL BARD'S, MOTION TO AMEND COMPLAINT together with VERIFIED SECOND AMENDED COMPLAINT on the BSA-ILA Pension Plan, by serving a true copy on its Counsel, Geoffrey P. Wermuth, Esq. of Murphy, Hesse, Toomey & Lehane, LLP,  World Trade Center East, 2 Seaport Lane, 4th Floor, Boston, MA  02210 by electronic mail via the U.S. District Court's system on this 7th day of July, 2005.


July 7, 2005


_____
Robert E. Daidone, Esq.
BBO# 544438
44 School Street
Suite 500
Boston, MA  02108
(617) 722-9310

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
PAUL BARD,                                )
                                          )
        Plaintiff,                        )        CIVIL ACTION
                                          )
v.                                        )        NO. 04-11946-NMG
                                          )
BOSTON SHIPPING ASSOCIATION –             )
INTERNATIONAL LONGSHOREMEN'S              )
ASSOCIATION PENSION PLAN,                 )
a/k/a BSA-ILA PENSION PLAN,               )
a/k/a BSA-ILA TRUST FUND,                 )
                                          )
        Defendant,                        )
_____)


## VERIFIED SECOND AMENDED COMPLAINT

This is an action under the Employment Retirement Security Act of 1974, codified as amended at 29 U.S.C. Sections 1001-1461 (ERISA), and is brought under ERISA Sections 502(a)(1)(B) and 502(a)(3).

### JURISDICTION

This case is based upon federal question jurisdiction, and this Court has jurisdiction under  28 U.S.C. 1331 and 29 U.S.C. 1001, et. seq., including ERISA Sections 502(e)(1) and (f).  Also, the Plaintiff exhausted his administrative remedies.  See Paragraphs 78 - 98 below.

### VENUE

This Court is the proper venue under 28 U.S.C. 1391, and 29 U.S.C. 1001, et. seq., including ERISA Section 502(e)(2), as this district is where the plan is administered, where the breach took place, and where the Defendant is located.

<u>FACTS</u>

BACKGROUND

1. The Plaintiff, Paul Bard, resides at 260 Clark Ave, Chelsea, Suffolk County, Massachusetts  02150.

2. The Defendant, Boston Shipping Association – International Longshoremen's Association Pension Plan, a/k/a BSA-ILA Pension Plan, a/k/a BSA-ILA Trust Fund, is an ERISA governed pension plan and trust with its principal place of business at 197 8th Street, Suite 775, Charlestown, Suffolk County, Massachusetts 02129-4208.

3. Paul Bard  worked as an employee for The Boston Shipping Association, Inc. and its predecessor and affiliated companies (together known as "BSA") for approximately 30 years.

4. Paul Bard was a union member in the International Longshoremen's Association ("ILA") for all or most of the same time as he was an employee of BSA.

5.  BSA and ILA formed a pension plan for BSA employees, known as the "BSA-ILA Pension Plan."

ELIGIBILITY AND PARTICIPATION

6. Any employee of BSA is eligible as a Participant in the BSA-ILA Pension Plan on his "Entry Date."

7. According to the BSA-ILA Pension Plan, "Entry Date" is defined as the first day an Employee completes an Hour of Service.

8.  Paul Bard has been a Participant in the BSA-ILA Pension Plan for at least 30 years.

9.  As an employee of BSA for 30 years, Paul Bard has been credited with having worked a total of 30,409 hours, including 28,059 regular hours, 400 workmen's compensation hours, 1,207.66 vacation hours, and 742.41 holiday hours.

10. Paul Bard has been credited with an average of over 1,000 Hours of Service for each Plan Year that he worked during his 30 years of employment.

11. As a member of the BSA-ILA Pension Plan, Paul Bard accumulated a "Year of Vesting Service" for each Plan Year during which he completed at least four hundred (400) Hours of Service.

12. Paul Bard worked in excess of four hundred (400) Hours of Service for at least twenty-five years of the years he was employed.

13. According to the BSA-ILA Pension Plan's terms, including the year 1983 where he was credited with workmen compensation hours, Paul Bard should be credited with at least twenty-six (26) Years of Vesting Service.

QUALIFIED-ERISA PLAN

14. The BSA-ILA Pension Plan is intended to constitute a qualified Pension Plan within the meaning of 26 U.S.C. 401 (Section 401 of the Internal Revenue Code).

15. The Board of Trustees have the duty to see to it that the BSA-ILA Pension Plan is to conform to the Employee Retirement Income Security Act of 1974, as such may be amended from time to time.

16. The Board of Trustees have the duty to see that BSA contributions to the BSA-ILA Pension Plan are deductible for federal income tax purposes.

## CURRENT STATUS AS PARTICIPANT AND BENEFITS

17. On the current date, Paul Bard is still a Participant in the BSA-ILA Pension Plan.

18. According to the BSA-ILA Pension Plan's correspondence, Paul Bard is a "vested participant" in the BSA-ILA Pension Plan.

19. Upon Paul Bard's "Normal Retirement Date," he is entitled to receive a monthly benefit.

20. According to the BSA-ILA Pension Plan, "Normal Retirement Date" shall mean the first day of the month coincident with or next following Normal Retirement Age.

21. According to the BSA-ILA Pension Plan, "Normal Retirement Age" shall mean (a) the later of age sixty-five (65) and the fifth (5th) anniversary of the date the Participant commenced participation in the Plan or (b) the later of age sixty-two (62) and the completion of the twenty-five (25) years of Service.

22. According to the BSA-ILA Pension Plan provisions described in Paragraphs 16-19 above, Paul Bard is still a Participant in the BSA-ILA Pension Plan.

23. According to the BSA-ILA Pension Plan provisions described in Paragraphs 16-19 above, Paul Bard is entitled to receive a monthly benefit commencing on his "Normal Retirement Date."

24. Upon Paul Bard's Normal Retirement Date, the amount of the monthly benefit that Paul Bard shall be entitled to receive is $120.00 multiplied by the Number of Years of Service credited.

25. When a participant in the BSA-ILA Pension Plan has completed fifteen Years of Service, the BSA-ILA Pension Plan entitles such Participant to a disability benefit if such Participant becomes "totally and permanently disabled."

26. The Board of the BSA-ILA shall be the sole judge of whether a Participant is disabled, based upon competent medical evidence.

27. The monthly amount of the disability benefit is equal to the Participant's Accrued Benefit, which shall mean $120.00 multiplied by the Number of Years of Service credited at the date of determination.

EVIDENCE OF DISABILITY ON RETROACTIVE BASIS

28. In the years 1998 and 1999, BSA was aware that Mr. Bard had failed to pass drug and/or alcohol tests while a BSA employee.

29. On or about March 5, 2000, BSA, through the Employee Assistance Program called ComPsych, referred Paul Bard to Lawless & Company for a psychological evaluation.

30. ComPsych authorized three visits with Lawless & Company for Paul Bard.

31. Paul Bard visited with Lawless & Company on March 7, 2000, March 14, 2000 and March 21, 2000.

32. On March 7, 2000 Lawless & Company questioned Paul Bard's psychological condition, including but not limited to anxiety disorder, impulse disorder, substance abuse, and mood disorder.

33. On March 14, 2000 Lawless & Company questioned Paul Bard's psychological condition, including but not limited to "compulsive problems with behaviors" and "Obsessive Compulsive Disorder."

34. On March 21, 2000 Lawless & Company questioned Paul Bard's psychological condition, noting that Mr. Bard demonstrated anxiety with emotional overtones, and noted the pursuit of psychotherapy, and possible psychopharm intervention.

35. On July 23, 2001, BSA terminated Paul Bard's employment stating that "We have been advised that the sample you submitted for a recent drug and alcohol test tested

positive."

36. Paul Bard was "totally and permanently disabled" as of the date that he was terminated.

37. Paul Bard, an honorably discharged U.S. Veteran, sought treatment for his mental condition from Elliott Segal, M.D. at the Bedford, Massachusetts Veterans Administration during the 2001-2002 years.

38. Following treatment with Eliott Segal, M.D., Paul Bard treated with Dr. Kishanlal Chakrabarti, M.D. and Dr. Alba De Simone, Ph.D.

39. Paul Bard is still treating with Dr. Kishanlal Chakrabarti, M.D. and Dr. Alba De Simone, Ph.D.

40. Elliott Segal, M.D., who treated Paul Bard in the year 2001, classified Mr. Bard as "permanently and totally disabled," retroactive to the time during which he was employed by BSA.

41. Kishananlal Chakrabarti, M.D., who treated Paul Bard in the years 2002 to present, classified Mr. Bard as "permanently and totally disabled", retroactive to the time during which he was employed by BSA.

42. Dr. Alba De Simone, Ph.D., who treated Paul Bard in the years 2002 to present, classified Mr. Bard as "permanently and totally disabled", retroactive to the time during which he was employed by BSA.

43. The Social Security Administration, after a hearing of Mr. Bard's case, determined him to be disabled, retroactive to the time during which he was employed by BSA.

MISINFORMATION: DELAY ON APPLICATION FOR BENEFITS

44. Following his termination, Paul Bard was advised by a BSA employee, and Mr. Bard's ILA Union Delegate, to forego pursuing a "disability benefits" claim under the BSA-ILA

Pension Plan, until the date that a determination of "disability" was made on Mr. Bard's Social Security claim.

45. Paul Bard's ILA Union Delegate was Mr. Bard's exclusive and sole representative.

46. On September 20, 1999, BSA stated to Paul Bard and his counsel that "…the Union is the exclusive and sole representative of its members."

47. On September 20, 1999, when Paul Bard attempted to engage individual counsel at a grievance meeting, BSA informed counsel: "Paul Bard is a member of the International Longshoremen's Association and is therefore represented only by his Union.  Individual union members are not entitled to have counsel present at any grievance procedure meeting called under the provisions of the Agreement."

48. Paul Bard relied upon the advice of his Union Delegate, a BSA employee, in not seeking disability benefits until after a determination was made on his Social Security disability case, and in not engaging counsel on his disability pension benefits claim, until the year 2004, after the claim was appealed and denied by the BSA-ILA Pension Plan Board of Trustees.

APPLICATION FOR BENEFITS

FOLLOWING SOCIAL SECURITY ADMINSTRATION DECISION

49. On June 27, 2003, The Social Security Administration determined that, according to its rules, Paul Bard was disabled since July 22, 2001.

50. After the Social Security Administration Hearing of June 27, 2003, and prior to the BSA-ILA Pension Plan Board of Trustees  ("Board of Trustees") meeting of October 29, 2003, Paul Bard applied for "disability pension benefits" under the BSA-ISA Pension Plan.

### FIRST DENIAL OF DISABILITY PENSION BENEFITS

51. On October 29, 2003, the Trustees of the BSA-ILA Pension Plan reviewed Paul Bard's request for disability pension.

52. On such date, the Board of Trustees referenced a prior arbitrators' decision which stated that an individual which had been terminated from employment was not eligible for pension.

53. The Board of Trustees concluded that, because Mr. Bard was terminated from employment, he was not entitled to apply for pension benefits.

54. The Board of Trustees' decision was based on an aribitrator's decision of which Mr. Bard did not have access to as of the date that this complaint was filed.

55. The Board of Trustee's decision was not tendered to Mr. Bard in writing.

56. The Board of Trustee's decision did not advise Mr. Bard on how to perfect his claim.

57. The Board of Trustee's decision did not specify the plan provisions upon which it was based.

### APPEAL OF BOARD'S DECISION AND SECOND DENIAL

58. Paul Bard appealed the decision of the Board of Trustees.

59. On December 30, 2004, the Administrative Coordinator of the BSA-ILA Pension Plan sought counsel from the Fund's attorney, David Appugliese, Esq., as to whether Paul Bard was eligible to apply for a disability pension.

60. Attorney Appugliese determined that Mr. Bard was eligible for a disability pension even though he was terminated from employment, but that the Trustees must determine that he is totally and permanently disabled for him to successfully pursue his claim.

61. In his appeal to the Board of Trustees, Mr. Bard's submitted medical evidence of his disability, including the Social Security Administration's determination of disability, and

Dr. Alba DeSimone's medical opinion of his total and permanent disability, the latter medical opinion of which was set forth on the BSA-ILA Form, to the Board of Trustees.

62. The BSA-ILA Form submitted to the Board of Trustees specifically asked:  Is patient now totally and permanently disabled from his regular occupation?, and the Doctor Alba DeSimone's reply was checked "yes."

63. On February 25, 2004, the Board of Trustees met again to determine whether to grant Mr. Bard disability pension benefits, this time on the basis of "permanent and total disability" with the medical evidence before them.

64. At its February 25, 2004 meeting, the Board of Trustees discussed whether a person is disabled if the person is working.

65. At its February 25, 2004 meeting, the Trustees stated for the record, that if Mr. Bard's application were denied, he would have the opportunity to present to the Trustees further documentation that he "may obtain for further consideration of his application."

66. With a vote of 7 to 7 by the Board of Trustees, Mr. Bard's application was not approved by a majority of the votes cast.

67. On February 25, 2004, 7 Representatives of the ILA Union voted in favor of granting Mr. Bard disability pension benefits, and 7 Representatives of BSA voted against granting Mr. Bard disability pension benefits, and the 7 to 7 vote is characterized by the BSA-ILA trustees as a "deadlock."

68. The Board's vote of February 25, 2004 constitutes a denial of disability pension benefits.

69. The Board of Trustee's decision was not tendered to Mr. Bard in writing until requested by Mr. Bard's counsel on or about June 28, 2004.

70. The Board of Trustee's decision did not advise Mr. Bard on how to perfect his claim or advise on the right to file in federal court.

71. The Board of Trustee's decision did not specify the plan provisions upon which it was based.

72. On August 15, 2004, Paul Bard sought reconsideration of the decision by the Board of Trustees, sending to the Board of Trustees the medical documentation submitted in his prior request, together with supplemental medical documentation in support of his claim for benefits based upon his permanent and total disability.

CLEAR EVIDENCE OF DISABILITY

PROVEN BY MEDICAL DOCUMENTATION

73. The medical documentation sent to the Board by Mr. Bard on August 16, 2004 included a cover letter, Lawless & Company's three reports in the year 2000, Elliott Segal, M.D.'s determination of total and permanent disability while he was still employed by BSA, Dr. Alba De Simone, Ph.D.'s letter of determination of disability retroactive to the year 2000 and a current determination of disability, Dr. Kishanial Chakrabarti, M.D.'s determination of disability retroactive to the year 2000 and a current determination of total and permanent disability, The Social Security Administration's determination of disability retroactive to July 22, 2001 (while Mr. Bard was still employed), Emma Roger's (Counselor of Mr. Bard) letter regarding Mr. Bard's chemical dependency from July 30, 1999 to April 27, 2000, The Attending Physician's Statement of Total and Permanent Disability Form for the BSA-ILA Pension Trust Fund dated January 23, 2004, Mr. Bard's own affidavit testifying under the penalties of perjury to his permanent and total disability retroactive to when he was employed by BSA.

74. No competent medical documentation was submitted to the Board that counters the medical documentation in support of Mr. Bard's medical determination of permanent and total disability.

## THIRD DENIAL AFTER RECONSIDERATION

75. The Board of Trustees met on August 25, 2004, and reviewed Mr. Bard's request for reconsideration of his claim for disability benefits.

76. On August 25, 2004, the Board of Trustees denied Paul Bard's disability pension benefits.

77. In a letter dated August 26, 2004, BSA stated that the Trustees did not come to an agreement on "whether Mr. Bard was eligible to apply for pension due to his termination from employment on July 23, 2001. As the Trustees could not come to agreement, they have submitted your request to Fund Attorney to determine whether this disagreement is an issue which may be arbitrated."

## FOURTH DENIAL AFTER
## COMPLAINT FILED IN THIS CASE

78. Paragraphs 1 – 77 are hereby re-alleged and restated.

79. On or about September 3, 2004, Paul Bard filed suit in this case for disability and pension benefits.

80. Upon receiving being served Paul Bard's complaint, Counsel for the BSA-ILA Plan requested that Paul Bard await the BSA-ILA's final determination as to an award of Plan benefits.

81. On or about December 20, 2004, the trustees of the BSA-ILA Plan held a hearing before an Arbitrator, Philip Dunn, for the stated purpose of determining whether Paul Bard *was eligible to apply* for benefits under the BSA-ILA Plan, given that Mr. Bard was terminated from employment.

82. The BSA-ILA Plan trustees agreed amongst themselves that Mr. Dunn was to limit his decision to the issue of whether Paul Bard was eligible to apply for benefits, and was to decide no other issues.

83. On or about March 4, 2005, Mr. Dunn determined that Paul Bard *was eligible to apply* for disability benefits, even though he had been terminated from employment.  See Arbitrator's Decision, sent by Union Counsel to Plaintiff's Counsel.  S.A.R. pages 1 – 11.

84. Paul Bard was not specifically represented in the BSA-ILA Plan hearing that was held to break the stated tie-vote.

85. The BSA-ILA Plan trustees, and not Mr. Bard or his representatives, presented the evidence and arguments to Mr. Dunn on the issue of whether Mr. Bard was eligible to apply for disability benefits.

86. After Mr. Dunn determined that Mr. Bard was eligible to apply for benefits, the BSA-ILA Plan Trustees held another meeting during March, 2005, for the stated purpose of determining whether Mr. Bard would be granted the disability benefits that he sought.

87. Upon information and belief, on or about March 23, 2005, the trustees of the BSA-ILA Pension Plan denied Paul Bard the disability benefits that are provided for in Article VIII of the BSA-ILA Plan.

88. On or about March 30, 2005, upon inquiry by Paul Bard's counsel of the BSA-ILA Plan's reasons for the denial, Plan's Counsel, Geoffrey Wermuth, Esq. stated that he was uncertain as to the exact reasons for the Plan's denial of disability benefits to Mr. Bard, but would disclose such upon inquiry of his client.

89. As of this date, April 20, 2005, the reasons for Plan denial have still not been tendered to Mr. Bard.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

90. Paragraphs 1-89 are hereby incorporated.

91. After having been terminated from employment, Paul Bard had been first advised by a BSA employee and his Union Representative to await a determination of "disability determination" by the Social Security Administration.

92. Paul Bard awaited a determination of a "disability determination" by the Social Security Administration, which took approximately 2 years.

93. After the July, 2003 Social Security Administration "disability determination", Paul Bard submitted his claim for disability benefits under the BSA-ILA Pension Plan.

94. On October 29, 2003, the Board of Trustees of the BSA-ILA Pension Plan denied Paul Bard's claim, citing Mr. Bard's ineligibility to apply for pension benefits, on the basis that his employment was terminated.

95. After the denial referred to in the above Paragraph, Paul Bard appealed the Board of Trustee's decision.

96. On February 25, 2004, the same Board of Trustees reviewed Mr. Bard's appeal, and effectively denied it, by voting 7 to 7 to deny/award the benefits.

97. The vote of February 25, 2004 constitutes a denial because it is an absence of a "majority of the votes case" required for an approval.  See Paragraph 13.6, and See Allegation #110 below.

98. ACCORDING TO PARAGRAPH 13.11 OF THE BSA-ILA PLAN AS APPLIED TO PAUL BARD, PAUL BARD HAD A RIGHT TO A FINAL DECISION WITHIN 60 DAYS AFTER FEBRUARY 25, 2004, OR IN NO EVENT LATER THAT 120 DAYS AFTER FEBRUARY 25, 2004,  OR JUNE 25, 2004.

99. THE TRUSTEES OF THE BSA-ILA PLAN DID NOT RESOLVE ITS TIE VOTE OF FEBRUARY 25, 2004 REGARDING MR. BENEFITS, BY JUNE 25, 2004.

100. THE BSA-ILA PLAN DID NOT ENGAGE AN IMPARTIAL UMPIRE TO RESOLVE ITS TIE VOTE OF FEBRUARY 25, 2004 BY JUNE 25, 2004.

101. PAUL BARD WAS ENTITLED TO FILE SUIT IN FEDERAL COURT ON JUNE 26, 2004, GIVEN THE FAILURES OF THE PLAN'S TRUSTEES.

102. ON JUNE 26, 2004, THE TRUSTEES OF THE PLAN VIOLATED PARAGRAPH 13.11 OF THE PLAN BY FAILING TO NOTIFY MR. BARD OF ITS FINAL DECISION REGARDING MR. BARD'S APPLICATION OF DISABILITY BENEFITS.

103.  ON JUNE 26, 2004, PAUL BARD HAD EXHAUSTED HIS ADMINISTRATIVE REMEDIES UNDER THE PLAN.

104. The Board of Trustees' minutes for February 25, 2004, which were not received by Paul Bard until August, 2004 and pursuant to his request, stated that Mr. Bard would have further opportunity to provide medical documentation in support of his claim of "permanent and total disability."

105. By letter of August 16, 2004, and after review of the status of the file, Mr. Bard requested that the Board of Trustees reconsider his claim based upon the presentation of further medical evidence in support of his claim of "permanent and total disability."

106. On August 25, 2004, the Board of Trustees again effectively denied Mr. Bard's claim, citing Mr. Bard's potential ineligibility to apply for benefits, due to his *termination of employment*.

107. Mr. Bard is a vested participant in the BSA-ILA Pension Plan.

108. No plan provision provides for a forfeiture of Mr. Bard's vested benefits because of a termination of employment.

109. On August 26, 2004, the Board of Trustees informed Mr. Bard that is was deadlocked on the issue of Mr. Bard's eligibility to apply for benefits, which was an effective denial of Mr. Bard's claim.

16

110. On August 26, 2004, the Board of Trustees informed Mr. Bard that it sent a request to its Fund Attorney to determine whether the issue of Mr. Bard's eligibility for benefits on the basis of his termination of employment was an issue that could be arbitrated.

111. To deny Mr. Bard "ineligibility" to receive pension benefits on the basis of termination of employment is not a ground that was an option that the Board of Trustees of the BSA-ILA Pension Plan had, given the provisions of the BSA-ILA Pension Plan.

112. The Board of Trustees did not cite the plan provisions upon which they relied, in denying Mr. Bard's claim on the ground of  Mr. Bard's "ineligibility" to receive pension benefits.

113. The ground of "ineligibility" to receive pension benefits on the basis of termination of employment is not granted by a plan provision.

114. On September 3, 2004, Paul Bard filed this complaint, and alleged in his original complaint that to deny on the basis of "ineligibility" due to termination of employment is "not a relevant issue, according to BSA-ILA Pension Plan provisions, for purposes of determining Mr. Bard's pension benefits."

115. The BSA-ILA Pension Plan does not provide for arbitration as a mechanism of resolving disputes, but, according to Paragraph 13.1 of the Plan, allows the trustees to appoint an impartial umpire to break a tie vote upon a deadlock.

116. Paragraph 13.1 of the Plan conflicts with Paragraph 13.6 of the Plan, the latter of which requires a majority vote for approval.

117.  If a majority vote is needed under the Plan, absence of a majority vote would constitute a failure or denial of any vote in question.

118.  Paul Bard refrained from further action on his complaint, pending the representation by Counsel of the BSA-ILA Pension Plan that arbitration would resolve the alleged "deadlock," and that the BSA-ILA would make a final decision.

119.  Upon presentation of the issues by the BSA-ILA trustees, and without representation by

Mr. Bard, Mr. Dunn, the Arbitrator, stated that Mr. Bard was eligible to apply for benefits.

120. According to the BSA-ILA trustees' representations to Mr. Bard, the Arbitrator did not determine the ultimate issue of whether Mr. Bard was entitled to the disability benefits under Article VIII of the Plan.

121. Thereafter, the BSA-ILA Plan declined disability benefits to Mr. Bard for reasons unknown to Mr. Bard at this time.

122. Counsel for the BSA-ILA Plan stated that he was uncertain of the specific reasons for denial, but that further action by Plaintiff would have to be pursued in federal court, as the plan's decision was final.

123. Counsel for BSA-ILA Plan represents on behalf of the Plan that the Plan's decision is final, and that administrative remedies have been exhausted by Mr. Bard.

124. The BSA-ILA Pension Plan summary plan description provides that Mr. Bard has the right to file in federal court if his claim has been appealed and denied by the BSA-ILA Pension Plan.

125. Mr. Bard has exhausted his administrative remedies under the BSA-ILA Pension Plan.

126. Mr. Bard exhausted his administrative remedies under the BSA-ILA Pension Plan as of June 26, 2004, and, upon information and belief has been denied his disability benefits after awaiting from that time to now, and as of this date, does not know why he has been denied his disability benefits.

THE RECORD BELOW OF THE BSA-ILA PENSION PLAN
"THE ADMINISTRATIVE RECORD"

127. Paragraphs 1 through 126 are hereby incorporated by reference.

128. On June 28, 2004, Paul Bard, through his attorney, sent a letter to the BSA-ILA Administrator, which provided in part: "We are requesting copies of all documents pertaining to Mr. Bard's right to pension disability benefits, including the pension plan itself, any claims filed, any documentation regarding decisions made, any board votes, memos, reasons for denial, his personnel file, and any other documents relied upon…Upon Mr. Bard's last request for the pension plan, he was provided with a copy of a blue book dated April, 1988 (with one amendment), which was sent to him on April 14th." See Letter dated June 28, 2004 attached as Administrative Record 1 (AR 1-2), and blue book called "Your Pension Plan" (AR 3-37).

129. During July, 2004, the Administrator of the BSA-ILA made available a packet to Paul Bard, containing the following documents:

    a.   Minutes of the October 29, 2003 meeting of the BSA-ILS Board of Trustees (AR 38).

    b.   Minutes of the January 30, 2004 meeting of the BSA-ILA Board of Trustees (AR 39-40).

    c.   Minutes of the February 25, 2004 meeting of the BSA-ILA Board of Trustees (AR 41).

    d.   A BSA-ILA Pension Trust Fund Pension Application Form, with Dates of Meetings of 1/30/04 and 2/25/04 (AR 42).

    e.   A Boston Shipping Association "Employee Service History Report" for Paul Bard dated January 15, 2004 (AR 43).

    f.   A BSA-ILA Pension Trust Fund Application For Disability Benefits signed by Mr. Bard and notarized on January 15, 2004 (AR 44-45).

    g.   A BSA-ILA Pension Trust Fund Form labeled "Attending Physician's Statement of Total and Permanent Disability", for Paul Bard (AR 46).

h.  A BSA-ILA Pension Trust Fund letter dated December 30, 2003 addressed to David A. Appugliese (AR 47).

i.  An e-mail dated December 31, 2003 from David A. Appugliese to the BSA-ILA Pension Trust Fund (AR 48-49).

j.  A copy of a Social Security Determination of Mr. Bard's mental condition (AR 50-55)

k.  A November 27, 2002 letter from Dr. Kishanlal Chakrabarti, M.D. and Dr. Alba De Simone, Ph.D. regarding Mr. Bard's mental disability (AR 56-57).

l.   A letter dated July 23, 2001 from  Boston Shipping Association, Inc. to Paul Bard (AR 58).

m.  A letter dated March 3, 2000 from Boston Shipping Association to Paul Bard (AR 59).

n.  A letter dated March 3, 2000 from Boston Shipping Association to STEP, Inc. (AR 60).

o.  A letter dated October 25, 1999 from Boston Shipping Association to Goodwin, Proctor & Hoar (AR 61).

p.  A letter dated September 20, 1999 from Boston Shipping Association to Christopher N. Hug (AR 62).

q.  A letter dated July 29, 1999 from Boston Shipping Association to Mr. Bard (AR 63).

r.  A letter dated October 14, 1998 from Boston Shipping Association to Mr. Bard (AR 64).

s.  An undated letter signed by Mr. Bard and addressed to the Board of Trustees (AR 65).

t.  A copy of the BSA-ILA Pension Plan as restated October 1, 2000 (AR 66-111).

130. According to the documents referred to in the above, the Board of Trustees denied Mr.

Bard's application for benefits on October 29, 2003.

131. According to the documents referred in the paragraph above, the same

Board of Trustees denied Paul Bard's appeal for disability pension benefits on February

25, 2004.

132. The BSA-ILA Pension Plan Board of Trustees that heard Mr. Bard's application for

benefits on February 25, 2004, is the same Board of Trustees that heard Mr. Bard's

application for benefits on October 29, 2003.

133. On August 16, 2004, Paul Bard requested that the Board of Trustees reconsider his

latest denial of disability pension benefits.

134. On August 16, 2004, in support of his request for reconsideration of denial of disability

benefits on the basis that the Board was not convinced that he was disabled, Mr. Bard

submitted additional medical evidence to the Board of Trustees.

135. Mr. Bard submitted the following documents in support of his request for

reconsideration:

   a. Cover letter ("Reconsideration Letter") dated August 16, 2004, requesting

   a reconsideration of the Board of Trustee's prior denial of disability

   pension (AR 112-115);

   b. Lawless & Company's psychological analysis of Mr. Bard for the dates Mardch

   7, 2000, March 14, 2000, and March 21, 2000 (Exhibit "A" to Letter)(AR 116-

   117);

   c. Treating physician, Elliott Segal, M.D.'s, determination of Mr. Bard's disability

   while Mr. Bard was employed by Boston Shipping Association (Exhibit "B" to

   Letter)(A.R. 118);

   d. Treating physician, Dr. Kishanlal Chakrabarti, M.D.'s determination of Mr.

   Bard's disability retroactive to the year 2000, and a current determination of total

and permanent disability (Exhibit "C" attached to Reconsideration Letter)((AR 119-120);

    e.   Treating doctor, Alba De Simone, Ph.D.'s, determination of Mr. Bard's disability retroactive to the year 2000, and a current determination of total and permanent disability (Exhibit "D" attached to Reconsideration Letter)(AR 119-120).

    f.   The Social Security Administration's determination of disability retroactive to July 22, 2001 (while Mr. Bard was still employed) (Exhibit "E" attached to Reconsideration Letter)(AR 121).

    g.   Emma Roger's (Counselor of Mr. Bard) letter regarding Mr. Bard's chemical dependency (and evidence of disability) from July 30, 1999 to April 27, 2000 (Exhibit "F" attached to Reconsideration Letter)(AR 122).

    h.   Attending Physician's Statement of Total and Permanent Disability form for the BSA-ILA Pension Trust Fund dated 1/23/04 and signed by Dr. Alba De Simone (Exhibit "G" attached to Reconsideration Letter)(AR 123);

    i.   Mr. Bard's Affidavit as to his permanent and total disability during his dates of employment at Boston Shipping Association, Inc., to the present date. (Exhibit "H" attached to Reconsideration Letter)(AR 124-125).

136.  On August 25, 2004, the Board of Trustees met and denied Paul Bard's request for reconsideration of an award of disability pension benefits.

137.  On August 26, 2004 the Board of Trustees sent a letter to Mr. Bard informing him of its denial of disability benefits, but stated that the issue of whether eligibility of Mr. Bard to apply for disability benefits, was sent to a Fund Attorney to determine whether such issue could be arbitrated (AR 126).

138.  On August 27, 2004, the Administrator Coordinator stated that Mr. Bard would

not be receiving a copy of the minutes and vote because the minutes and other

votes contained within reveal matters of which do not concern Mr. Bard.

139. The documents referred to as AR 1 through AR 126 above, are the evidence presented

to the Board of Trustees, and tendered to Mr. Bard upon request, in deciding Paul Bard's

grant/denial of disability pension benefits under the BSA-ILA Pension Plan (documents

referred to herein as "Administrative Record" and are attached hereto as such).

140. After filing the complaint in this case, on or about December 17, 2004, Paul Bard filed a

motion for temporary restraining order (see the docket in this case), of which Paul Bard

withdrew upon representations by the Fund Attorney, including the representation that the

hearing was not binding on Mr. Bard, but only on the BSA-ILA plan trustees, and that

an unfavorable decision could be appealed by Mr. Bard.

141. The Arbitrator's decision sent to Mr. Bard has been labeled in an Appendix called

the Supplemental Administrative Record ("SAR"), attached hereto, and such record is

intended to accompany the documents labeled as the Administrative Record set forth in the

bound Appendix already on file in this case.


COUNT I

IMPROPER DENIAL OF DISABILITY BENEFITS

(ERISA SECTION 502(a)(3))

142. Paragraphs 1-141 are hereby re-alleged and restated.

143. Paul Bard is a current participant in the BSA-ILA Pension Benefit Plan.

144. Paul Bard is a vested participant in the BSA-ILA Pension Benefit Plan.

145. Paul Bard had thirty (30) years of service with BSA at the time he was terminated from

employment.

146. The medical evidence contained with the Administrative Record, as defined above, is

competent, and clearly shows that Paul Bard was permanently and totally disabled since before the date he was terminated, to the present date.

147. The Board of Trustees has no competent medical evidence that counters the evidence submitted by Mr. Bard.

148. In none of the four denials of disability pension benefits for Mr. Bard did the BSA -ILA Pension Plan Board of Trustees give sufficient reasons for denial.

149. In none of the four denials of disability pension benefits for Mr. Bard did the BSA-ILA Pension Plan Board of Trustees indicate which plan provision(s) the denial was based upon.

150. In none of the four denials of disability pension benefits for Mr. Bard did the ESA-ILA Pension Plan Board of Trustees give a sufficient explanation of the steps that Mr. Bard could take to perfect his claim.

151. No BSA-ILA Plan provision subjects Mr. Bard's vested benefits to forfeiture.

152. The Board of Trustee's denial of benefits is an abuse of discretion.

153. The Board of Trustee's denial of benefits is arbitrary and capricious.


COUNT II

CLARIFICATION OF FUTURE BENEFITS:

NORMAL RETIREMENT BENEFITS

(ERISA SECTION 502(a)(1)(B))


154. Paragraphs 1-153 are hereby re-alleged and restated.

155. The BSA-ILA Pension Plan initially denied Paul Bard's disability claim on the basis that Paul Bard was "ineligible" for benefits due to the fact that he had been terminated from employment on July 23, 2001.

156. If Mr. Bard is characterized by the Board of Trustees as being "ineligible" for benefits

on the basis of his termination of employment, he would not be able to collect his normal retirement benefits.

157. The Board of Trustees have again denied Mr. Bard's claim for disability benefits, either because it deems Mr. Bard ineligible, or on some other ground, currently unknown to Mr. Bard.

158. Paul Bard worked for BSA for 30 years.

159. Paul Bard is vested in at least 26 Years of Vesting Service.

160. Paul Bard's rights in his pension benefits are vested, and as such, they are not subject to forfeiture.

161. By determining Mr. Bard's benefits on the basis of "ineligibility", or other, unknown ground, a question exists as to the Plan's intent to pay Mr. Bard's future retirement benefits, of which Mr. Bard has believed that he was entitled to as of his normal retirement date.

COUNT III

RETROACTIVE PAYMENTS:

DISABILITY BENEFITS

(ERISA SECTION 502(a)(1)(B))

162. Paragraphs 1 – 161 are hereby re-alleged and restated.

163. ERISA Section 502(a)(1)(B) provides for enforcement of benefit rights and plan terms, including legal damages, of which may be awarded on a retroactive basis.

164. The BSA-ILA Plan has violated ERISA Section 502(a)(1)(B) by failing to make disability benefit payments to Mr. Bard since July 23, 2001.

COUNT IV

ADDITIONAL EQUITABLE RELIEF

DISABILITY BENEFITS

(ERISA SECTION 502(a)(3))

165.  Paragraphs 1 – 164 are hereby re-alleged and restated.

166.  No decisions on Mr. Bard's appeal of disability benefits were provided by the Plan to Mr. Bard within the time required by the Plan.

167.  The eventual adverse decision reached by the Plan was rendered beyond the "statute of limitations" in the plan and the Department of Labor regulations, and the Plan should be estopped from asserting such decision; the decision should be vacated; the administrative record should not include such decision; and the administrative record should be reviewed by this Court de novo as it stood on the date that the Plan heard Mr. Bard's request for reconsideration and failed again to make a decision.

WHEREFORE, THE PLAINTIFF RESPECTFULLY DEMANDS THAT THE DEFENDANT PAY THE AMOUNT OF $452,380 AS DAMAGES; AND PRAYS AND REQUESTS THAT THIS COURT AWARD HIM DISABILITY PENSION BENEFITS FROM THE DATE OF HIS EMPLOYMENT TERMINATION ON JULY 23, 2001, TO THE DATE WHEN THE PLAINTIFF IS IN RECEIPT OF HIS NORMAL RETIREMENT BENEFITS UNDER THE BSA-ILA PENSION PLAN (AUGUST 13, 2013), FOR 26 YEARS OF VESTING SERVICE, OR $452,380, TOGETHER WITH ANY INCREASES IN BENEFITS.

WHEREFORE, THE PLAINTIFF RESPECTFULLY PRAYS AND REQUESTS THAT HE

BE AWARDED PRE-JUDGMENT AND POST JUDGMENT INTEREST ON THE AMOUNT
AWARDED ABOVE, PLUS COSTS.

WHEREFORE, PLAINTIFF RESPECTFULLY REQUESTS THAT THIS
HONORABLE COURT DETERMINE HIS RIGHTS TO BENEFITS ON THE
ADMINISTRATIVE RECORD AS IT STOOD ON THE DATE THE COMPLAINT IN
THIS CASE WAS FILED; THAT THE BOARD OF TRUSTEES OF THE BSA-ILA
PENSION PLAN BE EQUITABLY ESTOPPED FROM EXPANDING THE
ADMINISTRATIVE RECORD TO INCLUDE ACTIONS TAKEN BY ITSELF AFTER
THE DATE THE COMPLAINT IN THIS CASE WAS FILED; THAT ANY
ATTEMPTED SUPPLEMENTION OF THE ADMINISTRATIVE RECORD AFTER
SUCH DATE BE STRICKEN AND/OR ANY DECISIONS AFTER SUCH DATE BE
VACATED; THAT ANY EXTRINSIC EVIDENCE TO THE ADMINISTRATIVE
RECORD BE NON-ADMISSABLE; AND THAT THE MERITS OF THIS CASE BE
DETERMINED BY THIS COURT DE NOVO ON THE ADMINISTRATIVE RECORD
AS IT STOOD ON THE DATE THE COMPLAINT IN THIS CASE WAS FILED.

WHEREFORE, THE PLAINTIFF RESPECTFULLY PRAYS AND REQUESTS THAT
THIS COURT DECLARE THAT HE IS ENTITLED TO NORMAL RETIREMENT BENEFITS
COMMENCING AT HIS NORMAL RETIREMENT AGE, FOR 26 YEARS OF VESTING
SERVICE.

WHEREFORE, THE PLAINTIFF RESPECTFULLY PRAYS AND REQUESTS THAT
THIS COURT AWARD HIM REASONABLE ATTORNEYS FEES, AND OTHER RELIEF
THAT THIS COURT DEEMS PROPER.

<u>TRIAL BY JURY</u>

PLAINTIFF REQUESTS AND MAKE DEMAND FOR TRIAL BY JURY ON ANY

AND ALL FACTUAL ISSUES.

JULY 7, 2005

PAUL BARD,
By His Attorney,

(signature on file with this Court)

_____
Robert E. Daidone, Esq.
BBO# 544438
44 School Street
Suite 500
Boston, MA  02108
(617) 722-9310


<u>VERIFICATION OF COMPLAINT</u>


I, Paul Bard, have read the above complaint and swear under the pains and penalties of perjury that all of the allegations contained therein are true, to the best of my knowledge and belief.

(verification on separate page in PDF format)

_____
Paul Bard




<u>CERTIFICATE OF SERVICE</u>

I, Robert E. Daidone, Esq. hereby certify that I served the above Second Amended Complaint on Defendant's counsel by filing such electronically on the U.S. District Court's system on this 7th day of July, 2005.

(signature on file with this Court)

_____
Robert E. Daidone, Esq.