BARD V. BSA-ILA PENSION PLAN

SUPPLEMENTAL ADMINISTRATIVE RECORD

PAGES 1 THROUGH 30

JUNE 25, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL BARD, | ) |
| Plaintiff, | ) CIVIL ACTION |
| v. | ) NO. 04-11946-NMG |
| BOSTON SHIPPING ASSOCIATION – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION PLAN, a/k/a BSA-ILA PENSION PLAN, a/k/a BSA-ILA TRUST FUND, | ) |
| Defendant. | ) |

PLAINTIFF'S EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

Pursuant to F.R.C.P, Rule 65(b), Plaintiff requests a Temporary Restraining Order precluding the BSA-ILA Pension Plan ("Plan") and Trust ("Trust") from proceeding in arbitration as scheduled on Monday, December 20, 2004 at 10:00 A.M. or thereafter unless and until this Court determines that arbitration is necessary under the terms of the Plan and Trust documents. In support hereof, Plaintiff states as follows:

1. This case is about the non-payment of disability pension benefits by a Plan that is sponsored and jointly administered by the employer, Boston Shipping Association, Inc. ("BSA") and the International Longshoremen's Association Union ("Union" or "ILA").

2. The Union represented Mr. Bard while Mr. Bard was an employee of BSA.

3. About the time of Mr. Bard's termination from employment, the Union advised Mr. Bard to forego applying for benefits under the BSA-ILA Pension Plan until after Mr. Bard had a Social Security Administration's determination of disability.

4. The Union advised Mr. Bard to first obtain a determination of disability from the Social Security Administration, and then he could then use this determination to apply for disability benefits under the BSA-ILA Plan.

5. Mr. Bard applied for, and awaited, a determination of disability from the Social Security Administration, which he finally obtained a couple years later.

6. Mr. Bard then applied for disability benefits under the BSA-ILA Plan, and the denial of such benefits, together with the procedure of which followed (described fully in the complaint), are the basis of the lawsuit herein.

7. After his termination from employment, Mr. Bard could no longer afford to pay Union dues, nor sought the benefits of the Union, and thereafter the Union terminated Mr. Bard's membership.

8. The Union represented to Mr. Bard that it was not representing Mr. Bard in this pursuit of his benefits under the Plan. Counsel for Mr. Bard asked Mr. Bard to check to make sure that he was no longer represented by the Union, and Mr. Bard checked and confirmed this.

9. Mr. Bard does not want the Union to represent him, as is no longer an employee of BSA, no longer in the Union, and further, is uncertain as to whether the Union currently has a committed interest in helping him given his current status. A conflict of interest may exist, in that the Union shares office space in the same location as the employer and various employees, and the Union may generally operate to protect its

most senior employees as opposed to, or at the expense of, a non-employee, non-union member.

10. A complaint was filed in this case on September 7, 2004.

11. That the complaint was served on or about the same day by sending such by certified receipt requested.

12. That no receipt for delivery was returned, but counsel for the Plan, Murphy, Hesse, Toomey & Lehane, LLP, accepted service of the Complaint on September 22, 2004. See Exhibit A attached.

13. That in his letter of September 22, 2004, Counsel for the Plan requested a stay of the federal suit, pending the resolution of a tie vote of the plan by arbitration.

14. That Plaintiff's counsel agreed to take some time to consider whether it would consent to such, and meanwhile, given time, the tie vote may be broken (leaving no argument with respect to a failure to exhaust administrative remedies). Plaintiff's counsel never consented to such, but supplied time for the tie vote to be broken.

15. That Counsel for the Plan had made reference to Section 13.1 of the Plan provisions regarding tie votes and the right to the appointment of a third party umpire (included in the document filed with the complaint entitled "Administrative Record.")

16. That Plaintiff's counsel granted extensions to Plan Counsel to file a response to the complaint, for the purpose of the Plan breaking a tie vote by the said mechanism.

17. That the Plan provides for a third person as umpire to break a deadlock, but does not refer to arbitration.

18. That on December 2, 2004 E. David Wanger, Esq. of Angoff, Goldman,

Manning, Wanger & Hynes, P.C. wrote a letter to Plaintiff, whereby he stated that it represented the International Longshoremen's Association ("ILA"), and that the ILA "had attempted without success to reach Mr. Bard." See Exhibit B attached.

19. That, by the context of the letter, it appeared that the ILA was of the position that it was going to represent Mr. Bard at the scheduled arbitration. Mr. Bard's consent to participation, together with Union representation, could be considered consent, and a waiver of rights, by Mr. Bard with respect to appealability of any award rendered, and Plaintiff's counsel expressed such concern to Attorney Wanger.

20. Attorney Wanger stated that either his firm or Plaintiff's counsel, if it wanted to, could represent Mr. Bard at the arbitration proceedings. Attorney Wanger was unable to make representations as to the bindingness of such an arbitration award.

21. That Plaintiff's counsel, at the time, was unable represent Mr. Bard at such an arbitration hearing because it had to be available for five motions in another court on the same date (which changed yesterday), and further, Plaintiff's counsel does not know the ground rules of the procedure, nor the substantive rights, and given the complexity of the issues, could not adequately prepare for such a procedure on such short notice. This is in addition to its concerns about waiver of Mr. Bard's rights.

22. That Plaintiff's counsel thereafter attempted to research when arbitration is required in jointly administered ERISA plans, and discovered that it is usually only required by collective bargaining agreements, entered into by Union representatives. That Plaintiff's counsel, after request for all documents relied upon by the Plan in making its decisions with respect to Mr. Bard's benefits, had not been provided with a copy of any collective bargaining agreements.

4

S.A.R 4

23. That on December 13, 2004, Plaintiff's counsel drafted and circulated to the Plan's attorney, and the Union's attorney, a letter stating Plaintiff's counsel represented Mr. Bard, not the Union, that Mr. Bard does not consent to be bound by an arbitration award, and that if it is the intent of the parties to bind Mr. Bard (as opposed to the Trustees against each other), without right to appeal to the federal court, that the arbitration hearing be postponed providing time for the federal court, upon request, to determine whether Mr. Bard must submit to binding arbitration, or else get written assurance that the arbitration does not bind Mr. Bard, and does not preclude him from going to federal court for appeal. See Exhibit C attached.

24. On December 14, 2004 the Union's counsel stated that the Union's participation was limited to the capacity as acting as trustees of the Board, and not as a representative of Mr. Bard.

25. Union's counsel then sent the attached letter, which it read to Plaintiff's counsel by phone before sending, where it is asserts that Mr. Bard "confirms" no objection to ILA Trustees participation, and "confirms" that it will not release the ILA Trustees, pursuant to the trust documents. With respect to the "participation" issue, the Plan and Trust provide for an appointment of a third party umpire, and with respect to the "release" issue, the Plan provides a limitation of liability for Trustees that participate in voting. Plaintiff's counsel does not fully understand the purposes of the letter, as the trust documents speak for themselves. But no representation is made as to whether an award is binding. See Exhibit D attached.

26. On December 15th, another Counsel sent a letter stating that it represented "the Boston Shipping Association", as opposed to Trustees of the Plan, and that an

5

S.A.R.5

arbitration was scheduled for December 20th, and that the letter sent to Plan's counsel was forwarded to BSA's counsel, and that "The Trustees are deadlocked within the meaning of the Trustees Plan and arbitration is the method of resolution." See Exhibit E attached.

25. On December 16th, in response to Plaintiff's counsel's inquiries, the Plan's Attorney, informed Plaintiff's counsel that he could not defer the arbitration hearing set for Monday, December 20th; that he did not have the authority to defer such; that *he did not know for sure whether any decision rendered was binding on Mr. Bard*, but that he did not think so; and that Plan's counsel should get in touch with Union's counsel, *as the Union will be representing Mr. Bard in the said proceeding.* Plan's counsel was also going to try to write a letter by the end of the day evidencing his understanding that the arbitration award would not be binding on Mr. Bard, nor non-appealable, but no letter was received by Plaintiff's counsel.

28. According to correspondence in the attachments to Mr. Bard's complaint, an arbitrator's decision exists regarding "eligibility" to apply for plan benefits, of which was used to decide a prior BSA employee's rights to disability benefits upon termination, and Mr. Bard heard from co-workers at his employer that the participant was precluded from appealing the denial of his eligibility due to his participation in binding arbitration. Mr. Bard does not consent to participation in a binding arbitration award, unless he is required to do so by collective bargaining documents or other agreements between the Union and the employer, which would be contrary to the Plan documents, of which entitle him to federal court review. Nor does Mr. Bard want to waive his rights to argue that the Plan has already exhausted its administrative remedies.

28. The Plan's Administrator was unable to provide this arbitration decision to

Plaintiff's counsel upon verbal request in August, 2004, and currently, the Union's attorney is unable to supply this decision to Plaintiff's counsel; the employer nor Plan nor Union has supplied this decision or any collective bargaining rights or information, and Mr. Bard has no idea as to what is involved in consenting to participate in the upcoming scheduled arbitration, but does not desire to risk Mr. Bard's rights.

30. Plaintiff had already exhausted administrative remedies according to the terms of the Plan and Trust at the time it filed suit (see Complaint), and Mr. Bard does not consent to a binding arbitration decision, or otherwise, to a release of its claim in this lawsuit that administrative remedies have been exhausted, it merely allowed the plan more time to resolve its deadlock informally.

31. The Plaintiff has a likelihood of success on the merits of this case (see Complaint), but will be irreparably harmed if he is enjoined from attacking a binding arbitration award due to his "deemed" appearance by Union representation, of which he does not consent to.

31. If the arbitration procedure is required, its deference to a later date harms only the Plaintiff, in that an award of his benefits is delayed. The hearing can be rescheduled with no harm to the Plan. Therefore, Plaintiff argues that no security should be required to support the relief requested herein.

WHEREFORE, Mr. Bard respectfully requests that this Court:

1. Temporarily restrain, and preliminary enjoin, the BSA-ILA Trust from pursuing arbitration as a means of resolving Mr. Bard's rights until it is first