UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                              )
PAUL BARD,                                            )
                                                              )
            Plaintiff,                                    )          CIVIL ACTION
                                                              )
v.                                                            )          NO. 04-11946-NMG
                                                              )
BOSTON SHIPPING ASSOCIATION –            )
INTERNATIONAL LONGSHOREMEN'S        )
ASSOCIATION PENSION PLAN,                    )
a/k/a BSA-ILA PENSION PLAN,                    )
a/k/a BSA-ILA TRUST FUND,                        )
                                                              )
            Defendant,                                  )
_____)

PLAINTIFF, PAUL BARD'S, OBJECTION TO THE
PROPOSED "ADMINISTRATIVE RECORD" RECENTLY SUPPLIED
BY DEFENDANT, AND REQUESTS FOR RELIEF

        This is Plaintiff, Paul Bard's, Objection to the proposed "Administrative Record"

tendered by the Defendant, BSA-ILA Pension Plan, pursuant to this Court's order at the

pretrial conference held on July 14, 2005, and Requests for Relief.  Mr. Bard requests

that certain items be acknowledged as part of the "Administrative Record" even though

they have been left out of Defendant's proposed "Administrative Record"; and further,

Mr. Bard requests that the BSA-ILA Plan be estopped from using certain items now

appearing in its proposed "Administrative Record" to argue its case.  Overall,  Mr. Bard

requests that the booklet tendered by Defendant be modified as necessary to truly reflect

the "Administrative Record."   In the alternative, Plaintiff asks that the Court adopt as the

"Administrative Record", the booklet entitled "Administrative Record" submitted by the

Plaintiff at the time that it filed its complaint.  Plaintiff also requests that this Court award

Mr. Bard penalties for failure to produce documents now appearing as part of the "Administrative Record" because they were not produced before when required by law.

At the pre-trial conference held at this Court during July, 2005,  the Defendant objected to the booklet submitted by the Plaintiff entitled "Administrative Record", attached to Plaintiff's Motion For Judgment on the Pleadings And/Or Motion For Summary Judgment And/Or Motion on the Case Stated (called "Motion For Summary Judgment" herein), on the basis that it was not correct.  Defendant was given until August 15, 2005 to submit what it considered the "Administrative Record."  What follows are Paul Bard's specific objections, and reasons therefore, as to why the booklet now supplied by Defendant and entitled "Administrative Record," is not what should be considered the true "Administrative Record."

I.   MR. BARD'S OBJECTION TO THE PROPOSED
     "ADMINISTRATIVE RECORD" SUPPLIED BY DEFENDANT

   A.  The Administrative Record Is The Evidence.

   The "Administrative Record "is the sole evidence in this case.  See Leahy v. Raytheon Company, 315 F. 2d 11 (1st Cir. 2002), quoting from McCarthy v. N.W. Airlines, Inc., 56 F. 2d 313, 314-15 (1st Cir. 1995).   "In an ERISA benefit denial case, trial is usually not an option:  in a very real sense, the district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but rather evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary."  See also Recupero, 118 F. 3d at 831. "In making this determination,

we look to the record as a whole: "the whole record consists of that evidence that was before the administrator when he made the decision being reviewed." <u>Cook v. Liberty Life Assurance Company of Boston</u>, 320 F. 3d 11 (1st Cir  2003); See Also, <u>Mitchell v. Eastman Kodak Co</u>., 113 F. 2d 433 (3d Cir. 1997).

B.    Certain Items that the BSA-ILA Plan Eliminated
      <u>From Its Proposed "Administrative Record."</u>


        The following items appear in the Plaintiff's booklet entitled "Administrative Record", as originally submitted by Mr. Bard as an attachment to its complaint in this case, but fail to appear in the booklet entitled "Administrative Record", as supplied by the Defendant.  An explanation is given as to why Paul Bard believes that such items should be included in the true "Administrative Record".

1.  <u>Summary Plan Description (Booklet)</u>.

        The "Summary Plan Description" that was distributed to Mr. Bard appears on pages AR 3 through AR 37 of Plaintiff's document entitled "Administrative Record."  When Defendant had requested a copy of the documents that governed his rights in early 2004, he was simply given a copy of this booklet, of which contained the Summary Plan Description.  Further, the same booklet was distributed to the BSA company employees generally, and as required by federal law, was done to comply with ERISA, and such booklet was to advise the employees as to their rights and benefits under the Plan.  While the Plan appears in the BSA-ILA's version of the "Administrative Record", the "Summary Plan Description" is left out.   Certain provisions in the "Summary Plan

Description" describe the claims process that was to be followed by the BSA-ILA in administering Mr. Bard's claim, and that support Plaintiff's case, include:

   a. <u>CLAIM AND CLAIM DENIAL PROCEDURE</u>.

   The Summary Plan Description contains a section called "Claim and Claim Denial Procedure" that is to be followed by the Plan trustees.   Some of the paragraphs in that section, which Mr. Bard relies upon in support of his claim for relief, and Motion For Summary Judgment, read as follows:

   i.   "The Board of Trustees must notify you or your spouse of the disposition of your or your spouse's claim within 30 days of the receipt by them of your written notice of claim.  **If there is a denial, the Board must provide to you or your spouse, in writing, the specific reasons for the denial and a reference to Plan provisions on which the denial is based**.  **In addition, the notice will explain what material or information is needed in order to perfect the claim, as well as the procedure used in the claim review**."

As described in the Memorandum that accompanies the Motion For Summary Judgment, and as can be seen by review of the documents entitled "Administrative Record" tendered by the Plan, the Plan did none of these.  The closest to the Plan's compliance with these requirements was its letter dated April 28, 2005 (too late) sent to Mr. Bard.  Mr. Bard's claim was submitted on or about October, 2003; the "Administrative Record" does not reflect a timely letter (within 30 days) of explanation of the material and/or information needed in order to perfect Mr. Bard's claim.

ii.    "You or your spouse may appeal a denial of a claim…**The Board of Trustees will then notify you of its decision within 60 days after the appeal is received**… If you not receive written notification within the time limits described above, you or your spouse can assume that you request has been denied, and you can begin appeal procedures…"

As described in the Memorandum that accompanies the Motion For Summary Judgment, and as can be seen by review of the documents entitled "Administrative Record" tendered by the Plan, the Plan failed to notify Mr. Bard of a decision within the prescribed 60 days.

iii.    "If you do not receive written notification within the time limits described above, **you or your spouse can assume that you request has been denied**, and you can begin appeal procedures."

Because Mr. Bard did not receive a decision within the prescribed 60 days, he could have assumed that his claim was denied, and he could have proceeded directly with his remedies in federal court (See "YOUR ERISA RIGHTS" below).

iii.    "Benefits are inalienable.  This plan was established for the benefit of you and your beneficiaries."

The "Summary Plan Description" characterizes the rights Mr. Bard received as "inalienable."   At this time, the Plan seems to make his rights more discretionarily available (with no apparent confinements or restrictions) than they were described to be.

   b. <u>YOUR ERISA RIGHTS</u>.

   The booklet contains a section entitled "YOUR ERISA RIGHTS."  Sentences relevant to Plaintiff's case include the following:

   i. "If your claim for a pension benefit is denied in whole or part you must receive a written explanation of the reason for the denial.  **You have the right to have the plan review and reconsider your claim**."

   ii. "If you have a claim for benefits which is denied or ignored, in whole or part, you may file suit in a state or federal court…

"Under ERISA, there are steps you can take to enforce the above rights.  For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in a federal court.  In such a case, the court may require the plan administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator."

As described in the Memorandum that accompanies the Motion For Summary Judgment, Mr. Bard had an immediate right to have the plan reconsider his claim and/or pursue his rights in federal court after a failure by the plan to award his benefits within the plan's provisions.

Also, if materials were not sent within 30 days after being requested (which appears to be the case here), fines may be imposed (See #13 below).

c. <u>DISABILITY BENEFITS</u>.

The booklet contains a section entitled "DISABILITY BENEFITS."  In this section, the Summary Plan Description creates greater rights than the Plan document does.  The section reads in part:

**"Total and Permanent Disability**

If you become totally and permanently disabled, you may apply to the Board of Trustees for a disability pension.

To be eligible you must:

   *Have completed **15 Years of Pension Service** at the time you became disabled.

   *Demonstrate to the Board by submission on approved forms of **competent**

**medical evidence** that you are permanently and totally disabled.

Commencing the first of the month after approval of your application will receive a disability pension of:   *$35.00 per month times your Years of Pension Service following October 1, 1949.  The disability pension benefit will be payable to you  **for your lifetime**."

IN ITS CLAIMS PROCESS, THE BSA-ILA PLAN INCORRECTLY CREATES ISSUES WITH RESPECT TO MR. BARD'S "ELIGIBILITY TO APPLY", WHEN THE SUMMARY PLAN DESCRIPTION CLEARLY **DOES NOT REQUIRE THAT MR. BARD "BE AN EMPLOYEE AT THE TIME THAT THE DISABILITY INCURS**." THE BOOKLET IS ADDRESSED TO MEMBERS ("AS A **MEMBER** OF THE BOSTON SHIPPING ASSOCIATION-INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION PLAN, YOU HAVE A HEAD START…" SEE PAGE 4 OF THE SUMMARY PLAN DESCRIPTION)(THE TOTAL AND PERMANENT DISABILITY SECTION APPLIES TO **MEMBERS** OF THE PLAN).

ACCORDING TO THE SUMMARY PLAN DOCUMENT, THE DISABILITY BENEFITS CONTINUE <u>FOR A LIFETIME</u>, NOT ONLY UNTIL NORMAL RETIREMENT AGE.

Because these provisions of the Summary Plan Description support Mr. Bard's interpretation of his rights, and argument that he is entitled to disability benefits, it should

be part of the "Administrative Record," just as is the Plan.    The Summary Plan

Description was distributed by the BSA-ILA Plan Board of Trustees to Mr. Bard as an

explanation of his benefits; it supports the correctness of Mr. Bard's claim for disability

benefits, and it supports Mr. Bard's Motion on the Pleadings, Summary Judgment, and on

the case; the Board should not now argue that it should be eliminated from the

"Administrative Record."


   2.  <u>BSA-ILA Board of Trustees' Vote and Minutes dated February 25, 2004.</u>


   The Minutes of the Regular Meeting of the Board of Trustees of the BSA-ILA

Pension Plan dated February 25, 2004 appear on Page AR 41-42 of the "Administrative

Record" proposed by Paul Bard.  These minutes play a major role in showing that the

Plan failed to honor its obligations under its Plan provisions.  They also show that the

Board of Trustees failed to render a decision on Mr. Bard's appeal in a timely manner. By

showing a failure of the Plan to grant Mr. Bard's benefits by such date, nor at any time

immediately thereafter (no action having been taken until Mr. Bard again approached the

plan in June, 2004), they show, as a matter or record, Mr. Bard's right to file an action in

the federal district court at such time and/or thereafter.


    These minutes were produced as part of Mr. Bard's request on June 28, 2004, for

the documents of the Plan relevant to its decision on Mr. Bard's request for disability

benefits.   These Minutes were cited several times in Mr. Bard's Motion For Summary

Judgment, and are a major part of his argument that the Plan failed to honor its Plan

provisions.  **HOW CAN THE PLAN ELIMINATE BOARD OF TRUSTEES'**

**MINUTES, WHERE THE BOARD TAKES ACTION ON MR. BARD'S**

**DISABILITY BENEFITS CLAIM, FROM THE "ADMINISTRATIVE RECORD."**

The vote on such date is evidence of events that occur in the administration of Mr. Bard's

claim.  The Board vote dated February 25, 2004 was initially tendered by the Plan as part

of the claims process documentation, and should be considered part the of the

"Administrative Record."

    3.  <u>Employee Service History Report</u>.

    The Employee Service History Report, which appears as AR 43 of the

Administrative Record proposed by Mr. Bard, was produced by the BSA-ILA Plan in

response to Mr. Bard's request of June 28, 2004 for relevant documents relied upon by

the Plan in administering Mr. Bard's claim.  The Report shows the date Mr. Bard was

hired, his job classification as "longshoremen",  his years' employed as "30", and the

number of regular hours, workmen's compensation hours, vacation hours and holiday

hours (used for vesting purposes) in each of the years of Mr. Bard's employment from

1970 through 2001.  It is the document that purportedly is used by the Plan to establish

vesting under the Plan;  why else would the Plan Administrator, Ms. Downing,  produce

it pursuant to Mr. Bard's request?  And why would it not be considered part of the

Administrative Record?

The document is needed to establish Mr. Bard's 15 years' service, a prerequisite to obtaining the disability benefits in question; and therefore, it is needed to establish his entitlement to Disability Benefits under the Plan.  It is cited to support this service requirement in Mr. Bard's complaint.  It is the only document produced by the Plan to reflect Mr. Bard's service.  **WITHOUT THIS DOCUMENT, THE SO CALLED ADMINISTRATIVE RECORD THAT IS PRODUCED BY THE BSA-ILA PLAN HAS NO EVIDENCE UPON WHICH IT RELIES TO ESTABLISH MR. BARD'S SERVICE!!!!** How does the Plan establish whether Mr. Bard has met the 15-year service requirement without this document? Therefore, the document should be part of the "Administrative Record."

4.  Mr. Bard's Letter of Termination dated July 23, 2001.

This letter was produced pursuant to Mr. Bard's request of June 28, 2004 for the relevant documents relied upon by the Plan in administering Mr. Bard's claim.  It reflects the Company's and Plan trustees' knowledge of Mr. Bard's attempted "rehabilitation, " prior to July 23, 2001.  It also reflects that Mr. Bard was not only terminated from employment at BSA, but it says "you are **discharged and permanently terminated from the industry**."  It also establishes that Mr. Bard is "**permanently barred from referral from industry employment**."  THIS IS EVIDENCE AND ACKNOWLEDGEMENT OF MR. BARD'S PERMANENT CONDITION AND DISABILITY.  This letter establishes Mr. Bard's termination as of July 23, 2001, and by the severity of the sanctions, shows that the industry is unforgiving of Mr. Bard's

condition, and is evidence of an acknowledgement  and evidence of Mr. Bard's **inability to obtain future gainful employment**.  Given the declarations, it also shows that the Union would have no interest in representing Mr. Bard's interests thereafter.

This document also is used to establish the commencement of benefits' date, as sought under the complaint, and the general situation that Mr. Bard was put into as a consequence of Mr. Bard's disability.

5.  BSA's Letters of March 3, 2000:  Evidence of
    Mr. Bard's Condition, As of March 3, 2000.

These letters, which are at AR 59 and AR 60 of the "Administrative Record" as proposed by Mr. Bard, was produced pursuant to Mr. Bard's request of June 28, 2004 for the relevant documents relied upon by the Plan in administering Mr. Bard's claim. They **show that the Company, BSA, received letters "from Step Inc. advising of your progress**" and received the billing for such, and the Union received notice of such.   They show that the Company, BSA, knew of and failed to provide further treatment to Mr. Bard with respect to his disability, any more than for three sessions of treatment.

These documents reflect that the management of BSA, and those who serve as directors of the BSA-ILA Plan, were aware of Mr. Bard's condition as far back as March 3, 2000.

6.  BSA Letter of October 25, 1999:  Evidence of
    Mr. Bard's Condition, As of October 25, 1999.

This letter, which is AR 61 of the "Administrative Record" as proposed by Mr. Bard, was produced pursuant to Mr. Bard's request of June 28, 2004, for the relevant documents relied upon by the Plan in administering Mr. Bard's claim. It reflects that the Company, the Union, and the <u>BSA-ILA Drug and Alcohol Committee (a combination of BSA and Union employees)</u>had evidence of Mr. Bard's condition on or about October 25, 1999.

7. BSA Letter of October 25, 1999:  Evidence of
   <u>Mr. Bard's Condition, As of October 25, 1999.</u>

This letter, which is AR 62 of the "Administrative Record" as proposed by Mr. Bard, was produced pursuant to Mr. Bard's request of June 28, 2004, for the relevant documents relied upon by the Plan in administering Mr. Bard's claim. It reflects that, according to the BSA, the Company, and ILA, the Union, Mr. Bard had no right as an employee to representation by an attorney. <u>According to BSA and the ILA, Mr. Bard only had a right to the Union, as his exclusive representative</u>. The letter is addressed to an outside attorney hired by Mr. Bard, advising the outside attorney that he had no right to represent Mr. Bard. After Mr. Bard's termination, The Union, and employee of BSA, advised Mr. Bard to await a determination of his social security disability benefits by the Social Security Administration, before applying for his disability benefits under the Plan, which Mr. Bard did.

8. BSA Letter of July 29, 1999:  Evidence of Mr.
   <u>Bard's Condition, As of July 29, 1999</u>

This letter, which is AR 62 of the "Administrative Record" as proposed by Mr. Bard, was produced pursuant to Mr. Bard's request of June 28, 2004, for the relevant documents relied upon by the Plan in administering Mr. Bard's claim. It reflects that, according to the BSA, the Company, and ILA, the Union, authorized "treatment and rehabilitation" for up to four visits with STEP.

9. BSA Letter of October 14, 1998: Evidence of
   Mr. Bard's Condition, As of October 14, 1998

This letter, which is AR 62 of the "Administrative Record" as proposed by Mr. Bard, was produced pursuant to Mr. Bard's request of June 28, 2004, for the relevant documents relied upon by the Plan in administering Mr. Bard's claim. This is evidence of Mr. Bard's condition as of October 14, 1998.

10. Mr. Bard's Motion For
    Temporary Restraining Order dated December 17, 2004.

The booklet entitled "Administrative Record" prepared by Defendants fails to contain Mr. Bard's Motion For Temporary Restraining dated December 17, 2004, filed with this Court. Even though the Motion For Temporary Order was not set for hearing, it reflects the intentions of the parties to this action: It is referred to in correspondence between the Plaintiff and the BSA-ILA Plan (see December, 2004 letters). It should be included as part of the "Administrative Record", as it reflects a preservation of Mr. Bard's rights, despite any further Plan action.

11. BSA-ILA's Request For Continuance dated September 22, 2004

This letter was part of the correspondence between the BSA-ILA Plan, of which should become part of the Administrative Record, just as other correspondence between the parties was included.

12. ILA's Letter of 12/2/04

This letter was part of the correspondence between the BSA-ILA Plan, of which should become part of the Administrative Record, just as other correspondence was included.

13. MR. BARD'S JUNE 28, 2004 REQUEST FOR
    RELEVANT DOCUMENTS RELIED UPON.

After first sending an Authorization to the BSA-ILA Plan on June 24, 2004 (see AR 2 of the "Administrative Record" proposed by Paul Bard), the Plan stated that it needed a specific request for documentation before releasing documentation.  The specific request sent by Paul Bard's counsel, at AR 1 in Mr. Bard's proposed "Administrative Record, was sent via fax to the number indicated.  The letter sets forth the following request:

"We are requesting copies of *all documents pertaining to Mr. Bard's rights to pension disability benefits*, including the pension plan itself, any claims filed, any documentation regarding decisions made, any board votes, memos, reasons for

**denial, his personnel file, and any other documents RELIED UPON**." (emphasis

supplied).

Paul Bard notes that sanctions are provided for, when documentation is not

provided, after a written request.  See Summary Plan Description, Section entitled

"YOUR ERISA RIGHTS":  "Under ERISA, there are steps you can take to enforce the

above rights.  For instance, if you request materials from the plan and do not receive them

within 30 days, you may file suit in a federal court.  In such a case, the court may require

the plan administrator to provide the materials and pay you up to $100 a day until you

receive the materials, unless the materials were not sent because of reasons beyond the

control of the administrator."


It should be pointed out that certain documents that were suppose to be produced

within 30 days of this letter request, were not, and the Plan now, after production only

recently, maintains that such documents are part of the "Administrative record".   See

Section C below.


C.  <u>The BSA-ILA Failed to Date Stamp</u>
    <u>The Documents That It Says Are Part of the Administrative Record</u>.


The BSA-ILA proposed Administrative Record is defective in the sense that no

dates are stamped on the documents that it contains; no date log is kept.  As a

consequence, how can the document entitled "Administrative Record", as tendered by the

Defendant, be used to show the documents available to the Plan on certain dates, when no

notation is made to reflect the dates that such are received?   Mr. Bard should be given

16

the benefit of the doubt on any issues with respect to dates documents were received by the Plan.

The BSA-ILA Plan *now* attempts to create dates for receipt on separate pages: for example, certain documents are labeled *on a separate page*, as having been received "Spring, 2004." See Page 000077 of "Administrative Record" proposed by the BSA-ILA Plan. But no dates were provided with respect to the documents that the Plan provided to Mr. Bard pursuant to Mr. Bard's June 28, 2004 request. In the newly proposed "Administrative Record" by the BSA-ILA, what follows this "Spring, 2004" date is a document that *should have been received in the year 2000, and was actually acknowledged to have been received in that year*. See AR 59 and AR 60 of the "Administrative Record" proposed by Mr. Bard; Also See Discussion that follows "BSA's Letters of Acknowledgement of Mr. Bard's Condition As of March 3, 2000" above).

Again, how can the document entitled "Administrative Record", as tendered by the Defendant, be used to show the documents available to the Plan on certain dates, when no notation is made to reflect the dates that such are received? The documents produced pursuant to Mr. Bards June 28, 2004 letter had no date-receipt notations. Mr. Bard should be given the benefit of the doubt on any issues with respect to dates documents were received by the Plan.

D. Certain Items That the BSA-ILA Plan Appears To Have
   Incorrectly Included In Its Proposed "Administrative Record."

The Plan failed to produce the following items, documents now included in is proposed "Administrative Record," in response to Mr. Bard's request of June 28, 2004. The Plan's non-production of such documents should entitle Mr. Bard, who is "not gainfully employed", and who has to undergo an already lengthy process to obtain his disability benefits, to penalties of $100 per day per document that the Plan failed to produce pursuant to his request. The Plan's failure to tender such documents has cost Mr. Bard more work on this case. In addition to being required to pay a monetary penalty for failure to comply with its Plan provisions, the Plan, as a matter of equity, should be estopped from utilizing such documentation to argue its case. On the other hand, as a matter of equity, Mr. Bard should not be precluded from utilizing such newly produced documentation to argue his case.

The first three of these documents were not tendered pursuant to Mr. Bard's letter request of June 28, 2004, and apparently were held by the Plan on such date, yet are considered part by the BSA-ILA Plan as part of the "Administrative Record". The amount imposed for such failures by the Department of Labor regulations, reflected in the Summary Plan Description, is $100 per day. From June 29, 2004 to August 15, 2005, a total of 370 days, the Plan has subjected itself to $37,000 in penalties per document ($100 x 370 days). Because three documents were tendered untimely, the plan has subjected itself to $111,000 in penalties for failure to timely produce these documents.

The remaining two of these documents are self-serving for the Plan, and were created by the Plan during this pending litigation, but were not tendered to Mr. Bard until this proposed "Administrative Record" was tendered to the Court on August 15, 2005.

These five documents that the Plan should be estopped from using for failure to timely produce, but that Mr. Bard should be able to utilize to argue its case against the Plan, are:

1. Arbitration Opinion and Award
   of Gerard McLaughlin dated July 15, 2002. (page 070)

Appearing as part of BSA-ILA's proposed Administrative Record is an opinion and award with respect to *another employee*, Gerard McLaughlin. See Page 000070. This document was not produced pursuant to Mr. Bard's request of June 28, 2004, and should not therefore be considered part of the Administrative Record, for the Plan's purpose. Its existence at this time, but not before, is unexplained, as is the date that the Plan received it.

2. Elliott Segal's Opinion of February 23, 2004 (page 0109)

Appearing as part of BSA-ILA's proposed Administrative Record is Dr. Elliott Segal's medical opinion as of February 23, 2004. See Page 000109. This document was not produced pursuant to Mr. Bard's request of June 28, 2004, and should not therefore be considered part of the Administrative Record, for the Plan's purpose. Its existence at this time, but not before, is unexplained, as is the date that the Plan received it.

3. Social Security Decision dated May 10, 2003 (page 063)

Appearing as part of BSA-ILA's proposed Administrative Record is the Social Security Administration's decision on Mr. Bard's disability. See Page 000063. This

document was not produced pursuant to Mr. Bard's request of June 28, 2004, and should not therefore be considered part of the Administrative Record, for the Plan's purpose.  Its existence at this time, but not before, is unexplained, as is the date that the Plan received it.

    4.  <u>March 23, 2005 Board of Trustees' Vote</u> (page 047)

    Appearing as part of BSA-ILA's proposed Administrative Record is minutes of the BSA-ILA's trustee's meeting on March 23, 2005.  See Page 000047.  This document would not have been available to produce pursuant to Mr. Bard's request of June 28, 2004; nor was it created until long after Mr. Bard's remedies were administratively exhausted;-serving, created in response to this litigation,  and  it should not therefore be considered part of the Administrative Record.

    5.  <u>Letter of December 15, 2004 from Attorney Appulgliese</u> (page 073)

    Appearing as part of BSA-ILA's proposed Administrative Record is a letter specifically created to interpret the previous letter that was obtained from Attorney Appulgliese.  See Page 000073.  This document would not have been available to produce pursuant to Mr. Bard's request of June 28, 2004; nor was it created until long after Mr. Bard's request of June 28, 2004; it is self-serving, and should not therefore be considered part of the Administrative Record.

II.  MR. BARD'S REQUEST FOR RELIEF.


   A.  Request That the Following Become Part of the "Administrative Record".


   Based on the arguments above, Mr. Bard requests that the following items be

recognized as part of the "Administrative Record":

   1.  Summary Plan Description (Booklet);

   2.  BSA-ILA Board of Trustees' Vote and Minutes dated February 25, 2004;

   3.  Employee Service History Report;

   4.  Mr. Bard's Letter of Termination dated July 23, 2001;

   5.  BSA's Letters of March 3, 2000:  Evidence of
        Mr. Bard's Condition, As of March 3, 2000;

   6.  BSA Letter of October 25, 1999:  Evidence of
        Mr. Bard's Condition, As of October 25, 1999;

   7.  BSA Letter of October 25, 1999:  Evidence of
        Mr. Bard's Condition, As of October 25, 1999;

   8.  BSA Letter of July 29, 1999:  Evidence of Mr.
        Bard's Condition, As of July 29, 1999;

   9.  BSA Letter of October 14, 1998:  Evidence of
        Mr. Bard's Condition, As of October 14, 1998;

  10.  Mr. Bard's Motion For
        Temporary Restraining Order dated December 17, 2004;

  11.  BSA-ILA's Request For Continuance dated September 22, 2004;

  12.  ILA's Letter of 12/2/04;

  13.  MR. BARD'S JUNE 28, 2004 REQUEST FOR
        RELEVANT DOCUMENTS RELIED UPON.

B.  Request That Any Documents Not Produced For Mr. Bard Prior
    <u>To This Lawsuit, Be Deemed to Be Received After This Suit Commenced</u>

Based upon the above arguments, Mr. Bard requests that this Court preclude

Defendant from arguing that documents were received by it prior to the date of Mr.

Bard's lawsuit – if such had not been produced by the BSA-ILA Plan for Mr. Bard at the

time of Mr. Bard's request, and as a consequence, do not appear in the "Administrative

Record" as originally submitted by Plaintiff on the date Plaintiff filed this suit.

C.  Request That The Following Documents Be Stricken From
    <u>The "Administrative Record" For Use by the Plan, But Available For Mr. Bard</u>.

Based upon the above arguments, Mr. Bard requests that, as a matter of equity, the

BSA-ILA Plan be estopped from utilizing the following documentation to argue its case.

On the other hand, as a matter of equity,  Mr. Bard requests that Mr. Bard be allowed to

utilize such documentation to argue his case.

1. Arbitration Opinion and Award
   of Gerard McLaughlin dated July 15, 2002 (page 070);

2. Elliott Segal's Opinion of  February 23, 2004 (page 0109);

3. Social Security Decision dated May 10, 2003 (page 063);

4. March 23, 2005 Board of Trustees' Vote (page 047);

5. Letter of December 15, 2004 from Attorney Appulgliese (page 073).

D.  Request Penalties In the Amount of $111,000 For Plan's Failure of
    Production of Documents In Response to Plan Participant's Request
    <u>In Violation of, And as Provided For in, Department of Labor Regulations</u>.

Based upon the above arguments, Mr. Bard also requests that this Court award penalties in the amount of $100.00 per day per document, for the Plan's failure to produce the three documents referred to above in a timely manner, following the letter request of Mr. Bard dated June 28, 2004. This amounts to penalties of $111,000.

August 28, 2005

PAUL BARD,
By His Attorney,

(signature on file with the Court)

_____

Robert E. Daidone, Esq.
BBO# 544438
44 School Street
Suite 500
Boston, MA  02108
(617) 722-9310

CERTIFICATE OF SERVICE

I, Robert E. Daidone, Esq. hereby certify that I served the above on Defendant's counsel by filing such electronically on the U.S. District Court's system on this 28th day of August, 2005.

(signature on file with the Court)

_____

Robert E. Daidone, Esq.