UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                          )
PAUL BARD,                                          )
                                                          )
      Plaintiff,                              )          CIVIL ACTION
                                                          )
v.                                                        )          NO. 04-11946-NMG
                                                          )
BOSTON SHIPPING ASSOCIATION –          )
INTERNATIONAL LONGSHOREMEN'S      )
ASSOCIATION PENSION PLAN,                  )
a/k/a BSA-ILA PENSION PLAN,                   )
a/k/a BSA-ILA TRUST FUND,                      )
                                                          )
      Defendant,                            )
_____)


PLAINTIFF, PAUL BARD'S RENEWED MOTION FOR JUDGMENT
ON THE PLEADINGS AND/OR THE CASE STATED
AND/OR MOTION FOR JUDGMENT IN WHOLE OR PART


      This is Plaintiff, Paul Bard's, Renewed Motion on the Pleadings under F.R.C.P.

Rule 12(c), Motion for Judgment on the Case Stated, And/Or Motion For Summary

Judgment in Whole or Part, under F.R.C.P. 56.   In support thereof, Plaintiff, Paul Bard

relies upon the attached Memorandum entitled Plaintiff, Paul Bard's, Memorandum in

Support of Motion For Judgment on the Pleadings And/Or the Case Stated, And/Or For

Summary Judgment in Whole or Part.  Plaintiff files this Renewed Motion After

Defendant has had the opportunity to prepare his version of the Administrative Record.

Mr. Bard has filed an Objection to the proposed Administrative Record filed by the

Defendant, and Requests For Relief.   Because Plaintiff is under Court Order to file its

responses by August 29, 2005, and Plaintiff's response was believed to be this Motion or

one substantially similar thereto, Plaintiff refiles this Motion without a ruling on its Objection.

Plaintiff requests that this Court find that Defendant breached the Plan provisions by failure to render a decision on his disability benefits appeal; that the Administrative Record be closed on August 25, 2004, when the Plan still failed to render a decision on Mr. Bard's request for reconsideration of his disability benefits appeal; that the Plan be estopped from expanding the Administrative Record to include its March, 2005 decisions, of which were rendered several months after the Plan required a decision to be made; that this Court render a decision *de novo* on the Administrative Record as it stood on August 25, 2004; that this Court preclude the attempt to introduce additional extrinsic evidence other than that evidence that appears in the Administrative Record; that this Court find that Mr. Bard is entitled to disability benefits retroactive to July 23, 2001, together with pre-judgment interest, post-judgment interest, attorneys fees and costs, and other relief that this Court deems proper.

August 28, 2005

PAUL BARD,
By His Attorney,

(signature on file with the Court)

_____
Robert E. Daidone, Esq.
BBO# 544438
44 School Street
Suite 500
Boston, MA  02108
(617) 722-9310

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
PAUL BARD,                              )
                                        )
        Plaintiff,                      )        CIVIL ACTION
                                        )
v.                                      )        NO. 04-11946-NMG
                                        )
BOSTON SHIPPING ASSOCIATION –           )
INTERNATIONAL LONGSHOREMEN'S            )
ASSOCIATION PENSION PLAN,               )
a/k/a BSA-ILA PENSION PLAN,             )
a/k/a BSA-ILA TRUST FUND,               )
                                        )
        Defendant,                      )
_____)


PLAINTIFF, PAUL BARD'S, MEMORANDUM IN SUPPORT OF
HIS RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS
AND/OR THE CASE STATED AND/OR
<u>FOR SUMMARY JUDGMENT IN WHOLE OR PART</u>


        Plaintiff, Paul Bard, moves under F.R.C.P. 12(c) for judgment on the pleadings, or in the

alternative, judgment on the case stated, or in the alternative, motion for summary judgment

under F.R.C.P. 56.  In support thereof, Plaintiff relies upon the Verified Second Amended

Complaint signed by Mr. Bard under the pains and penalties of perjury and filed on this day, and

the following Uncontested Facts.


<u>UNCONTESTED FACTS</u>


    1.  The Boston Shipping Association hired Paul Bard as an employee on or before
        October 1, 1974.  See Boston Shipping Association Employee Service History
        Report, Plaintiff's Administrative Record ("P.A.R"), P.A.R. 43; ELIMINATED
        FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN
        THOUGH PRODUCED IN RESPONSE TO PLAINTIFF'S REQUEST FOR
        RELEVANT DOCUMENTS (ELIMINATION FROM ADMINISTRATIVE
        RECORD OBJECTED TO ON TODAY'S DATE).

2.  The Boston Shipping Association terminated Paul Bard's employment on July 23, 2001  See Boston Shipping Association letter of July 23, 2001.  P.A.R. 58. ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH PRODUCED IN RESPONSE TO PLAINTIFF'S REQUEST FOR RELEVANT DOCUMENTS (ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

3.  The BSA-ILA Plan admits that Paul Bard was a "Participant" in the BSA-ILA Plan for at least 30 years.  See BSA-ILA Pension Plan's Answer to Complaint, ¶ 8.

4.  The BSA-ILA Plan admits that, on April 20, 2005, the date of Plaintiff's Amended Complaint, Paul Bard was still a "Participant" in the BSA-ILA Pension Plan.  See BSA-ILA Pension Plan's Answer to Complaint, ¶ 17.

5.  The BSA-ILA Plan admits that Paul Bard is a "vested Participant" in the BSA-ILA Pension Plan.  See Letter from BSA-ILA Pension Trust Fund dated December 30, 2003, A.R. 000069 ("A.R." represents the proposed "Administrative Record" of Defendant, submitted to this Court on August 12, 2005).

6.  According to Article VIII of the BSA-ILA Pension Plan, "In the event that a Participant who has completed fifteen (15) Years of Service becomes totally and permanently disabled, such Participant shall be entitled to a disability benefit."  See A.R. 000023.

7.  The BSA-ILA Plan admits that Paul Bard is a Participant who has completed approximately 30 years of employment, with an average of over 1,000 Hours of Service for each Plan Year that he worked.   See BSA-ILA Pension Plan's Answer to Complaint, ¶ 10.

8.  Paul Bard has met the fifteen (15) Years of Service requirement of Article VIII. See ¶ 7 above; See Employee History Report, P.A.R. 43 (ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH PRODUCED IN RESPONSE TO PLAINTIFF'S REQUEST FOR RELEVANT DOCUMENTS (ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

9.  The BSA-ILA Pension Plan does not deny that Mr. Bard was advised by a BSA employee, and Mr. Bard's ILA Union Delegate, to forego pursuing a "disability benefits" claim under the BSA-ILA Pension Plan, until the date that a determination of "disability" was made on Mr. Bard's Social Security claim.  See BSA-ILA Pension Plan's Answer to Complaint, ¶ 44.

10. The Administrative Record in this case contains treating physician's reports, and no physician reports to the contrary, that state Paul Bard was totally and permanently disabled prior to his employment termination.  See ¶ ¶ 11– 19 below.

11. Elliott Segal, M.D., a *treating* physician of Paul Bard, provided a medical opinion that Mr. Bard was totally and permanently disabled prior to his employment termination on July 23, 2001.  See A.R. 000095.

12. Dr. Kishanlal Chakrabarti, M.D., a *treating* physician of Paul Bard, provided a medical opinion that Paul Bard was disabled since 3/21/00, and was still totally and permanently disabled on June 23, 2004.  See A.R. 000096.

13. Dr. Abla De Simone, a *treating* physician of Mr. Bard, provided a medical opinion that Paul Bard was disabled since 3/21/00.  See A.R. 000096.

14. The Social Security Administration made a determination that Paul Bard was disabled retroactive to July 22, 2001, the day before Mr. Bard was terminated from employment.  See A.R. 000098.

15. Lawless & Company, a medical company engaged by Boston Shipping Association, issued three Reports in the Year 2000 evidencing Mr. Bard's disability in that year. See A.R. 000093.

16. Dr. Alba Simone, provided an opinion that Mr. Bard was still totally and permanently disabled on January 23,  2004.  See A.R. 0000100.

17. Mr. Bard, himself, provided an Affidavit, stating that he was totally and permanently disabled prior to his employment termination at Boston Shipping Association, and continuing to August 13, 2004.  See  A.R. 0000101.

18. No expert medical opinions exist in the administrative record other than those that support a finding that Mr. Bard is disabled.  See Answer to Complaint, ¶ 147; See Administrative Record.

19. The Board of Trustees of the BSA-ILA Pension Plan did not request to depose any of Paul Bard's physicians, request that Paul Bard be examined by an independent medical doctor, or otherwise request further information, in order to evaluate Mr. Bard's "permanent and total disability."  See Administrative Record.

20. The administrative record does not contain reasons to justify a denial of Paul Bard's condition of "permanent and total disability."  See Administrative Record.

21. Article VIII of the Plan provides that "The Board, *upon competent medical evidence,* shall be the sole judge of whether a Participant is disabled."  See Plan, Article VIII, A.R. 000023.

22. The administrative record contains *competent medical evidence* establishing Paul Bard's condition of "permanent and total disability".  See ¶ ¶ 10 - 19 19 above.

23. The Board of Trustees first denied Paul Bard's request for disability benefits on October 29, 2003, based upon an arbitrator's decision "which stated than an individual which had been terminated from employment was not eligible to apply for pension."  See Minutes of Regular Meeting of the Trustees of the BSA-ILA Pension Plan, October 29, 2003, A.R. 000045.

24. Mr. Bard appealed the decision of the Board of Trustees before December 30, 2003.  See Letter of BSA-ILA Plan dated December 30, 2003:

"Mr. Bard has appealed the decision of the Board and is requesting that the Fund's attorney review this decision and offer their opinion on his request." See A.R. 000069. The same Board of Trustees considered Paul Bard's appeal of his claim for disability benefits on January 30, 2004, and reached a "deadlock" decision, and tabled the issues for the next month. Regular Meeting of the Trustees of the BSA-ILA Pension Plan, January 30, 2004. A.R. 000046.

25. The same Board of Trustees voted seven to seven on Mr. Bar's appeal of his claim for disability benefits on February 25, 2004. See Minutes of the Trustees of the BSA-ILA Pension Plan, February 25, 2004., P.A.R. 41. ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH PRODUCED IN RESPONSE TO PLAINTIFF'S REQUEST FOR RELEVANT DOCUMENTS (ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

26. According to the BSA-ILA Plan's Answer to Mr. Bard's Complaint, at the February 25, 2004 Board meeting, the appeal "was not decided one way or another because the vote was a deadlock." See Answer to Complaint, ¶ 66. According to the Summary Plan Description, if a plan participant does not receive a decision within the time limits described, the participant can assume that the request for benefits has been denied, and the participant can proceed with appeal procedures. See P.A.R. 12 (Summary Plan Description Page 7). ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH PRODUCED IN RESPONSE TO PLAINTIFF'S REQUEST FOR RELEVANT DOCUMENTS (ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE.)

27. But the Trustees stated in the record at the same meeting that "if Mr. Bard's application were to be denied, he has the opportunity to present to the Trustees any further documentation he may obtain for further consideration of his application." See Minutes of the Regular Meeting of the Trustees of the BSA-ILA Pension Plan, February 25, 2004, P.A.R. 41. ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH PRODUCED IN RESPONSE TO PLAINTIFF'S REQUEST FOR RELEVANT DOCUMENTS (ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

28. According to Article XIII, Paragraph 13.11 "The Board must render a decision regarding the appeal of the claimant not later than sixty (60) days after a claimant's request for review was received. However, if there is a need to hold a hearing, a decision is to be rendered not later than one hundred twenty (120) days after the receipt of the request for review." See A.R. 000031.

29. The Board of Trustees did not send a written status of their board vote, nor a decision on Mr. Bard's appeal for disability benefits, to Mr. Bard within 60, nor 120 days, following the December, 2003 appeal, nor even following the February 25, 2004 meeting. See Administrative Record.

30. On June 28, 2004 Paul Bard requested copies of all documents "pertaining to Mr. Bard's rights to pension disability benefits, including the pension plan itself, any claims filed, any documentation regarding decisions made, any board votes, memos,

reasons for denial, his personnel file, and any other documents relied upon."  See Letter dated June 28, 2004, P.A.R. 1; and Authorization dated June 24, 2004, A.R. 000068.  LETTER OF 6/28/04 ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH  DOCUMENTS PRODUCED BY THE PLAN WERE IN RESPONSE TO PLAINTIFF'S (THIS) LETTER REQUEST FOR RELEVANT DOCUMENTS (ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

31.   According to the Administrative Record, the Board of Trustees took no further action on Paul Bard's disability appeal.  Mr. Bard thereafter, in a letter dated August 16, 2004, requested reconsideration of his appeal, re-submitting and supplementing his appeal with additional medical evidence.  See Administrative Record, 000090.  Mr.Bard had a right to request reconsideration.  See Summary Plan Description, P.A.R. 15 (Summary Plan Description, page 22): ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE  RECORD EVEN THOUGH PRODUCED IN RESPONSE TO PLAINTIFF'S REQUEST FOR RELEVANT DOCUMENTS (ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

32.   On August 16, 2004, Paul Bard submitted and resubmitted additional evidence of "permanent and total" disability including:  Lawless & Company's three reports evidencing disability in the year 2000, Elliot Segal, M.D.'s expert opinion regarding Mr. Bard's disability while still employed, Dr. Alba De Simone's expert opinion regarding Mr. Bard's disability while still employed; Kishanlal Chakrabarti, M.D.'s expert opinion regarding Mr. Bard's disability while still employed; The Social Security Administration's determination of Mr. Bard's disability while still employed; Emma Rogers' (Counselor of Mr. Bard) opinion regarding Mr. Bard's chemical dependency during 1999 and 2000); Dr. Alba De Simone's updated statement of disability as of 1/23/04; and Mr. Bard's own Affidavit regarding his disability as of August, 2004.  See A.R. 000093 – 000102.

33.   On August 25, 2004, the Board of Trustees again "did not come to agreement on whether Mr. Bard was eligible to apply for pension due to your termination of employment on July 23, 2001."  See Letter from BSA-ILA Pension Trust Fund dated August 26, 2004, A.R. 000103.

34.   The documents produced by the BSA-ILA Plan for Mr. Bard pursuant to his June 20, 2004 request for his pension documentation, together with the medical information submitted and re-submitted on August 16, 2004 by Mr. Bard with a request for reconsideration of his appeal, together with the response of the BSA-ILA Plan on August 25, 2004 is what is known as herein as the "Administrative Record."  THIS IS SUBJECT TO THE COURT'S RULING ON PLAINTIFF'S OBJECTION FILED ON TODAY'S DATE, REGARDING THE ELIMINATION OF CERTAIN DOCUMENTS BY DEFENDANT, EVEN THOUGH PRODUCED IN RESPONSE TO PLAINTIFF'S REQUEST FOR RELEVANT DOCUMENTS.

35.   The Board of Trustees did not decide Mr. Bard's appeal at its regularly scheduled meeting of August 25, 2004, nor send a decision to Paul Bard regarding

his appeal within 60 days, nor 120 days, from the February 25, 2004 meeting date; nor within 60 or 120 days from the August 16, 2004 request for reconsideration of his appeal. See Administrative Record.

36. Paul Bard filed this lawsuit on September 7, 2004. See Court Docket.

37. On September 17, 2004, The Board of Trustees accepted service of the complaint, indicated that an Answer was due by October 12, 2004, requested additional time to answer the complaint, and proposed to stay the case pending arbitration of the claim. See Letter of BSA-ILA dated September 22, 2004, Plaintiff's Supp..A.R. 9. ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH SENT BY DEFENDANT TO PLAINTIFF.

38. Thereafter, Plaintiff's counsel agreed to extend the due date for an answer, preserving all rights to argue that "administrative remedies has been exhausted" by the Plan, and preserving argument that no ERISA rights were being waived.

39. On December 4, 2004, Plaintiff's counsel received notice from Attorney Wanger, counsel for the International Longshoremen's Association ("ILA") of an arbitration to be held on December 20, 2004, regarding resolution of a "trustee deadlock" on Paul Bard's "entitlement to apply for disability pension". See Letter from Attorney Wanger, Plaintiff's Supp.A.R. 10. ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH SENT TO PLAINTIFF REGARDING PLAINTIFF'S CLAIM (ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

40. On December 13, 2004, Plaintiff's counsel again granted an extension to file an answer to the complaint, and the refused "to waive any of Mr. Bard's rights" and reserved "any and all rights that Mr. Bard has with respect to his ERISA benefits." See Letter of Robert E. Daidone dated December 13, 2004, A.R. 000110.

41. On December 17, 2004, Paul Bard filed an emergency motion for temporary restraining order with this court for the purpose of requesting that the arbitration be stayed until the parties clarified that Mr. Bard's rights would not be determined as final and binding, and that all of Mr. Bard's ERISA rights would be preserved. See Emergency Motion for Temporary Restraining Order filed on December 17, 2004, See Court Docket, Plaintiff's Motion For Temporary Restraining Order and Preliminary Injunction. ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH THE SUBJECT OF THE MOTION IS THE ADMINSITRATIVE REVIEW PROCESS (ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

42. On December 17, 2004, Counsel for BSA-ILA recognized that Mr. Bard's rights would be preserved, and not waived, if the emergency motion for temporary restraining order were withdrawn. See Letter of Attorney Geoffrey P. Wermuth, A.R. 000116.

43. On or about December 17, 2004, Plaintiff's counsel requested that the Court not hold a hearing on its emergency motion for temporary restraining order.

44. On December 20, 2004, the BSA-ILA Board of Trustees held a meeting before an arbitrator with its request for the arbitrator to determine "Whether or not Paul Bard is eligible to apply for a disability pension?"  See Award of Arbitrator dated March 4, 2004, A.R. 000118 – 000128.

45. On March 4, 2004, the arbitrator determined that Mr. Bard was eligible to apply for disability benefits.  See Award of Arbitrator dated March 4, 2004, A.R. 000118 – 000128.

46. Approximately March 31, 2004, Counsel for the ISA-BLA Plan verbally informed Counsel for Paul Bard that the Trustees denied Mr. Bard's application for benefits.

47. No letter or correspondence with reasons for denial was sent by the BSA-ILA Plan as of April 21, 2004, and on such date, Plaintiff filed an Amended Complaint.  See Court Docket, Amended Complaint.

48. On April 28, 2004, *after* this Amended Complaint was filed and served upon the BSA-ILA Plan, the BSA-ILA Plan wrote Paul Bard a letter denying his claim for disability benefits for the following reason:  "Pursuant to Article VIII (Disability benefits), sec. 8.1 the Board of Trustees, in its sole judgment, found that the applicant, Mr. Paul  Bard, was not totally and permanently disabled prior to his termination."  See BSA- ILA Plan Letter dated April 28, 2005, A.R. 000129.

49. In his Answer to the Amended Complaint, Defendant BSA-ILA waives "failure to exhaust administrative remedies" as an affirmative defense.  See Court Docket, BSA -ILA's Answer to Complaint, Paragraphs 122, 123, 124, 125 and 126.


<u>DISCUSSION</u>


This is an action under the Employment Retirement Security Act of 1974, 29

U.S.C. Sections §§ 1001-1461 ("ERISA").  Paul Bard maintains that he has been

improperly denied disability benefits under the ISA-BLA pension plan ("Plan") by its

Board of Trustees.  Paul Bard maintains that he is due disability benefits under Article

VIII, Paragraph 8.1 of the Plan, which provides:

> 8.1 In the event that a Participant who has completed fifteen (15) Years of Service becomes totally and permanently disabled, such Participant *shall* be entitled to a disability benefit which shall commence on the first day of the month following the Board's determination that the Participant is disabled.  The monthly amount of the disability benefit shall be equal to the Participant's Accrued Benefit.  The Board, upon competent medical evidence, shall be the sole judge of whether a Participant is disabled (emphasis supplied).  See A.R. 00023.

Because Paul Bard is a Participant who completed approximately 30 years' employment with the Boston Shipping Association, far in excess of the 15 Years of Service required to meet Paragraph 8.1, and, according to the uncontested medical evidence submitted as part of the Administrative Record,  because Mr. Bard became totally and permanently disabled, it is Mr. Bard's position that the Board of Trustees of the BSA-ILA Plan breached the Plan provisions by its failure to award Mr. Bard his disability benefits in a timely manner.

I. Standard of Review.

The BSA-ILA Plan gives discretion to the Board of Trustees to make a determination as to whether a Participant is disabled:  "The Board, upon competent medical evidence, shall be the sole judge of whether a Participant is disabled."  See Article VIII, ¶ 8.1, A.R. 00023.  As can be seen, while the Board has authority to determine disability, the Board's determination is not totally discretionary; the Board's decision must be made "upon competent medical evidence."  Thus, any decision by the Board must be founded on competent medical evidence before it.

Generally, when the plan administrator is given discretionary authority, a federal court reviewing the Board's decision applies an "arbitrary and capricious" standard of review.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 190 S. Ct. 948, 103 L.Ed. 2d 80 (1989).   But if the plan administrator is not given discretionary authority, a federal court reviewing the Board's decision may decide the case under a *de novo* standard.  Id.

It can be argued that an arbitrary and capricious standard of review should be applied in this case, given that the Board has discretionary authority.

But in this case, Mr. Bard requests that this Court take judicial notice of the fact that the Board had failed to make a timely determination of Mr. Bard's benefits after Mr. Bard's appeal of an adverse decision by the same Board of Trustees, and again failed to make a timely determination of Mr. Bard's benefits after Mr. Bard's request for reconsideration, upon submission of additional medical evidence.  See Uncontested Facts, ¶¶ 23 – 34, above.  The Plan *requires* that the Board of Trustees make a decision on an appeal of a disability benefits claim within 60 days after such appeal.  See Article XIII, ¶ 13.11, A.R. 00028 ("The Board *must* render a decision regarding the appeal of the claimant *not later than* sixty (60) days after a claimant's request for review was received.")  The Board breached the Plan's terms by failure to make a decision within this plan-imposed period, ending on or about February 25, 2004.   After a request by Mr. Bard for reconsideration of his appeal, the same Board again failed to make a decision at its Board of Trustees' meeting on August 25, 2004.   It thereafter did not make a decision until the fourth week of March, 2005, way beyond the time allowed by the Plan, and in violation of the Department of Labor regulations (the latter requires a decision within 45 days after appeal).

Therefore, Mr. Bard requests that this Court exercise its equitable powers to estop the BSA-ILA Plan from creating an additional administrative record beyond August 25, 2004, the date that it heard Mr. Bard's request for reconsideration.   He requests that this Court review the Administrative Record as it stood on August 25, 2004, at the time that

the Board was in breach of the plan provisions and had failed to make a decision on his

request for reconsideration, rather than the date that the Board ultimately made a decision

to deny Mr. Bard's benefits, several months beyond the period allowed, at the end of

March, 2005.

Even a review of the Administrative Record on October 16, 2004, (approximately

60 days following Mr. Bard's request for reconsideration – and assuming that the Board

should gain an additional 60 days for review after the request for reconsideration) would

reflect that *no* decision was made by the Board.  In the absence of a decision on August

25, 2004, and/or 60 days thereafter on October 16, 2004, it cannot be said that a decision

was made in an arbitrary and capricious manner; **a decision was not made at all**:

therefore, Paul Bard requests that this Court review the Administrative Record on a *de*

*novo* basis, and render a decision accordingly. See 29 C.F.R. 2560 Section 503(l):

> Failure to establish and follow reasonable claims procedures.  In the case of
> the failure of a plan to establish *or follow claims procedures consistent with*
> *the requirements of this section, a claimant shall be deemed to have*
> *exhausted the administrative remedies available under the plan and shall be*
> *entitled to pursue any available remedies* under section 502(a) of the Act
> on the basis that the plan has failed to provide a reasonable claims
> procedure that would yield a decision on the merits of the claim.
>
> SEE ALSO SUMMARY PLAN DESCRIPTION, PAGE 17 ("If you do not
> receive written notification within the time limits described above, *you or your*
> *spouse can assume that you request has been denied*, and you can begin appeal
> procedures"), P.A.R. 12.  ELIMINATED FROM DEFENDANT'S PROPOSED
> ADMINISTRATIVE RECORD EVEN THOUGH PRODUCED IN RESPONSE TO
> PLAINTIFF'S REQUEST FOR RELEVANT DOCUMENTS (ELIMINATION FROM
> ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

Because **no decision was made** by August 25, 2004, and/or within 60 days thereafter,

Mr. Bard could have filed suit on such date without having to contest an adverse Plan

decision; Mr. Bard therefore asks that this Court render a decision on the Administrative

Record as it existed on August 16, 2004 *de novo*.  See Cecilia Nichols v. The Prudential

Insurance Company of America, No. 04-1445-cv (Fed. 2nd Cir. April 21, 2005)(2nd Cir.

2005)(a failure to exercise discretion within the time period required by the plan was

considered a deemed denial of the claim and a *de novo* standard of review applied);

Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan,

No. 00-56988 (9th Cir.  11/25/2003)(9th Cir. 2003)(after the expiration of the deemed time

period without the Plan having made a decision, claim was deemed denied (applying

1977 CFR regulations), and case was reviewed under *de novo* standard of review).


        Several months late, on or about April 28, 2005, nearly 8 months after this lawsuit

was filed, and nearly 455 days after the original appeal was requested by Mr. Bard, and

several months after allowed by the Plan to make such a decision, the Board finally

provided Mr. Bard notice that it had rendered a decision to deny Mr. Bard's disability

benefits – and that it did such during the fourth week of March, 2005.   In addition to

providing a late notice and late decision, the Plan failed to follow other procedures

required by the D.O.L. regulations (see discussion under "The Administrative Record"

below), and in addition, its decision is flawed on substantive grounds (see discussion

under "Even the Administrative Record Supplemented by the The Supplemental Record

Evidences Permanent and Total Disability Without Question").  Thus, if this Court does

not strike this late developed administrative record on account of its being rendered

beyond the date allowed by the plan provisions, it should be vacated on the merits.

The Board's ultimate decision comes after Mr. Bard had completely exhausted his

administrative remedies, after he filed this lawsuit, and after he had a right to have his

benefits determined by this Court.    See 29 C.F.R. 2560 Section 503(l)(above).  While

this lawsuit was pending, Mr. Bard had filed a an emergency motion for temporary

restraining order requesting that this Court preclude further decisionmaking by the plan;

but Mr. Bard did not schedule a hearing on such motion based upon the representations of

the BSA-ILA plan that Mr. Bard would not be  waiving any of his rights to contest the

validity and bindingness of any such BSA-ILA decision, nor waiving his rights to argue

that such decision followed Mr. Bard's exhaustion of administrative remedies, and was

therefore rendered too late.  The BSA-ILA expressly waives the "exhaustion of

administrative remedies" as an affirmative defense in its Answer to Mr. Bard's

complaint.  See Answer to Complaint, ¶¶  122-126.   Mr. Bard therefore requests that the

Plan's procedurally and substantively flawed decision be vacated; and further he requests

that this Court review the Administrative Record, and render judgment, on a *de novo*

basis, on the Administrative Record as it stood on August 25, 2004, or alternatively, on

the date that this lawsuit was filed, September 7, 2004.

II.  Judgment on the Administrative Record As A Case Stated
      Versus A Motion For Summary Judgment.

The Court may enter judgment based upon its review of the Administrative Record

without more.   In the alternative, it may rule upon a motion for summary judgment, suggested as an alternative if the Court does not enter judgment on the basis of case stated.   We respectfully request that this Court enter judgment on Mr. Bard's claim in this case solely based upon a review of the Administrative Record, as the Administrative Record contains all the necessary facts for a determination.   Rendering judgment *on the basis of a case stated may require consent of both plaintiff and defendant:  Counsel for Mr. Bard has conferred with Counsel for the BSA-ILA Plan regarding this issue, and as of this date, agreement has not been reached.* .See Radford Trust v. First Unum Life Insurance Company of America, Civil Action No. 02-12477-WGY (D. Mass. 2004). The Court and parties have an interest in having this case decided as a case stated: "Rather than risk creating bad summary judgment precedent that might bleed into other areas of the law, courts should urge the parties in ERISA benefits cases to agree to treat their case as a case stated."  Radford Trust v. First Unum Life Insurance Company of America, Id.; Boston Five Cents,  678 F. 2d 11-12.   "This permits a court to decide a case based on a stipulated record, without applying the summary judgment standard.  The court simply draws such inferences as are reasonable from the facts."  Id. at 28.


.    If the court does not treat this case as a case stated, and instead, entertains a motion for summary judgment as suggested in the alternative, one of two methods of drawing inferences may be used.   When an arbitrary and capricious standard applies, and review is based solely upon an agreed administrative record, summary judgment "is merely a mechanism for tendering the issues and no special inferences are to be drawn in favor of a plaintiff resisting in summary judgment."  See First Unum at 26-27.; quoting Liston,

330 F. 2d at 24.  In cases where a *de novo* standard of review applies, however, the

ordinary summary judgment standard applies.  See <u>First Unum</u> at 26-27 citing <u>Hughes v.</u>

<u>Boston Mutual Life Ins. Co</u>., 26 F. 3d 264, 268 (1st Cir. 1994); <u>Golden Rule Ins. Co. v.</u>

<u>Atallah</u>, 45 F. 3d 512, 517 (1st Cir. 1995).  Under that standard, the Court would have to

view the evidence in the light most favorable to the non-moving party and draw all

reasonable inferences in its favor.  See <u>First Unum</u> at 26-27; citing <u>Eastman Kodak Co. v.</u>

<u>Image Technical Serve, Inc.</u>, 504 U.S. 451, 490 (1992).


     If the summary judgment approach were taken at this stage, this case would take

longer to resolve because the same issues that would be before the court in a summary

judgment motion, ultimately would have to be decided as a case stated or by trial.  See

<u>Radford Trust v. First Unum Life Insurance Company of America</u>, C.A. No. 02-12477 –

WGY, U.S. District Court (Dist. Mass . 2004).

III. <u>The Administrative Record</u>.

     In the case at hand, it is Mr. Bard's position that the Administrative Record should

include all correspondence in the attached Administrative Record, attached to the original

complaint filed in this case, but in no event should it include the decisions of the

arbitrator and Board of Trustees rendered during March, 2005.  It should not include

these additional items because any and all action taken by the Board of Trustees at that

time, was taken too late, in breach of the Plan provisions, and Mr. Bard does not waive

the Plan provisions providing for a required due date for decision.  See Article XIII, ¶

13.11, A.R. 00031.  Mr. Bard requests that this Court exercise "appropriate equitable

relief" under 29 U.S.C.  502(a)(3) to prevent the Board of Trustees from obtaining more

rights than the Plan allows.  No decision of the Plan existed on the date that the Plan had

to make a decision, and Plaintiff requests that the administrative record be frozen on such

date, calling for a *de novo* review of the record at such time: "…*de novo review applies*

*on the grounds that __inaction is not a valid exercise of discretion__ and leaves the court*

*without any decision or application of expertise to which to defer* … (emphasis

supplied)" Cecilia Nichols v. The Prudential Insurance Company of America, No. 04-

1445-cv (Fed. 2nd Cir. April 21, 2005)(2nd Cir. 2005)(after the expiration of time period

without the Plan having made a decision, the case was reviewed under *de novo* standard

of review) at 18;  See Also, Jebian v. Hewlett-Packard Co. Employee Benefits

Organization Income Protection Plan, No. 00-56988 (9th Cir.  11/25/2003)(9th Cir.

2003)(after the expiration of the deemed time period without the Plan having made a

decision, claim was deemed denied (applying 1977 CFR regulations), and case was

reviewed under *de novo* standard of review).


According to Article XIII, Paragraph 13.11 "The Board *must* render a decision

regarding the appeal of the claimant not later than sixty (60) days after a claimant's

request for review was received.  However, if there is a need to hold a hearing, a decision

is to be rendered not later than one hundred twenty (120) days after the receipt of the

request for review. (emphasis supplied)"  See A.R. 00032.


It should first be noted that the Plan's directive is mandatory, not permissive i.e.

the Board <u>must</u> render a decision <u>not later than</u> 60 days.   The Board should not gain

additional procedural and substantive rights as a consequence of its breach of Plan provisions.

Further, it should be noted that the Plan was in breach of its plan provisions as early as February 25, 2004 by failure to render a decision on Mr. Bard's pending appeal that was submitted during December, 2003. While Mr. Bard could have gone to federal court at *that* time, he instead chose to request reconsideration by the plan on August 16, 2004 (having received no decision 8 months after his appeal was filed), and by doing so, he may have implicitly agreed to give the plan more time -- at least to the next board meeting scheduled for August 25, 2004 -- to render a decision on his pending claim for disability benefits. Worst case scenario, applying the 60 day rule of Paragraph 13.11 by treating Mr. Bard's request for reconsideration as a new appeal, would require that the plan make a decision by October 16, 2004; and at the *very* latest, and assuming the necessity of holding "a hearing", Mr. Bard was due a final decision within 120 days following his request for reconsideration, which would have been or on or about December 16, 2004.    See ¶ 13.11.

Nevertheless, as stated above, Mr. Bard clearly had the right to go to federal court as early as February, 2004 due to his exhaustion of administrative remedies by that date. See 29 C.F.R. 2560 Section 503(l):

> Failure to establish and follow reasonable claims procedures.  In the case of the failure of a plan to establish *or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be*

*entitled to pursue any available remedies* under section 502(a) of the Act
on the basis that the plan has failed to provide a reasonable claims
procedure that would yield a decision on the merits of the claim.

SEE ALSO SUMMARY PLAN DESCRIPTION, PAGE 17 ("If you do not
receive written notification within the time limits described above, *you or your
spouse can assume that you request has been denied*, and you can begin appeal
procedures"), P.A.R. 12. ELIMINATED FROM DEFENDANT'S PROPOSED
ADMINISTRATIVE RECORD EVEN THOUGH PRODUCED IN RESPONSE TO
PLAINTIFF'S REQUEST FOR RELEVANT DOCUMENTS (ELIMINATION FROM
ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

While the Plan fives the Board of Trustees *60 days* to decide an appeal, the D.O.L.

regulations give the plan *only 45 days* to notify Mr. Bard of an adverse decision on a

disability benefits claim (See 29 C.F.R. 2560.503-1(f)(3)); and give the Board of Trustees

*only 45 days* to render a decision on (Mr. Bard's) appeal. (See 29 C.F.R. 2560.503-

1(i)(3)(i)). Thus, the plan provisions in the BSA-ILA Plan actually give more time to the

Board of Trustees to render decisions than the federal regulations allow, *in violation of*

*the regulations*. Whatever period applies, however, the Plan failed to honor the time

limitations imposed, and Mr. Bard had exhausted his administrative remedies on or

before February 25, 2004, entitling Mr. Bard to use the federal courts at that time.

Thus, any Plan action taken after its Board meeting of August 25, 2005, or after the

time that this lawsuit was filed on September 7, 2005, or after December 16, 2004

(assuming the worst case scenario where the Plan had 120 days after Mr. Bard's request

for reconsideration) should not be admitted as part of the Administrative Record, as such

Plan action is untimely. The Board of Trustees should be estopped, on equitable

grounds, from admitting any further documentary evidence while it was in breach.

For purposes herein, Mr. Bard characterizes all activity that the Plan tendered to him, and that occurred subsequent to the date that this lawsuit was filed, the Supplemental Administrative Record ("S.A.R."). Mr. Bard requests that the Supplemental Administrative Record be severed from the Administrative Record, and not considered in determining Mr. Bard's entitlement to disability, because Mr. Bard had a right to have his benefits determined by this Court after his exhaustion of administrative remedies, both before and after the Plan failed to make a decision following Mr. Bard's request for reconsideration.

In addition to its failure to make a timely decision with respect to Mr. Bard's claim, the BSA-ILA Plan failed to follow proper claims procedures in other ways. It failed to provide an adequate notice of claim denial to Mr. Bard from its inception. 29 C.F.R. 5260.503-1(g). Specifically, the Plan initially denied Mr. Bard's claim on the basis of "Mr. Bard's ineligibility", but failed to provide a reference to specific plan provisions on which such a denial was based; failed to describe additional information that was necessary to complete the claim; and failed to provide the method for obtaining review. See Minutes or the Regular Meeting of Trustees dated October 29, 2003 and the absence in the Administrative Record of any written notices to Mr. Bard following such date. Nor did the plan provide to Mr. Bard "full and fair review" of its adverse benefit determination as is required by the regulations. See 29 C.F.R. 5260.503-1(h). Specifically, the same Board of Trustees that denied Mr. Bard's claim at the October 29, 2003 meeting, was the *same* Board of Trustees that heard Mr. Bard's appeal on February 25, 2004, and also, the *same* Board of Trustees that heard Mr. Bard's appeal on August

25, 2004 (all regular meetings of the Board), *in violation of* 29 C.F.R. 5260.503 –

1(h)(ii)(the plan must provide for a review that does not afford deference to the initial

adverse benefit determination and that is conducted by an appropriate named fiduciary of

the plan *who is neither the individual who made the adverse benefit determination that is

the subject of the appeal*…").    The plan failed to provide identities of medical experts as

part of "full and fair review" in violation of 29 C.F.R. 5260.503-1(h)(iv)(plan must

provide for the "identification of medical or vocational experts whose advise was

obtained on behalf of the plan in connection with a claimant's adverse benefit

determination, without regard to whether the advise was relied upon in making the

benefit determination" otherwise "the claims procedures…will not be deemed to provide

a claimant with a reasonable opportunity for full and fair review of …(an) adverse benefit

determination"  See 29 C.F.R. 5260-503-1(h)(3)).  The identity information had to be

disclosed by the plan *without* Mr. Bard's request (The claims procedures of a …plan will

not be deemed to provide a claimant with a reasonable opportunity for a full and fair

disclosure…unless, "in addition to complying with the requirements of paragraphs

(h)(2)(ii) through (iv) of this section, the claims procedures…provide for identification of

medical…experts").  And the Plan was *required to* consult with a health care professional

who has appropriate training and experience "in the field of medicine involved in the

medical judgment" in deciding an appeal of an "adverse benefit determination that is

based on a medical judgment." See 29 C.F.R. 5260-503.1(h)(3)(iii).  Because the BSA-

ILA *failed to disclose identities of any* such medical experts, in violation of 29 C.F.R.

5260.503-1(h)(3), and the "Administrative Record" produced by the Plan is devoid of any

such medical experts, it should be presumed for purposes of the law, that it did not do so,

and its decision reached is invalid.  As a consequence of these failures, the Plan failed to

make a decision that was valid, even if it were somehow argued by the Plan that it

actually made a timely decision.

Therefore, the Administrative Record, as Mr. Bard proposes it, would contain the

Defendant's submission filed on August 12, 2005 entitled "Administrative Record"

through the date of August 16, 2004, as modified by this Court's rulings on Mr. Bard's

Objection to the Proposed "Administrative Record" filed on today's date.  As stated in

the Uncontested Facts section above, the documents in the Administrative Record reflect

that Mr. Bard originally applied for disability benefits during October, 2003; and that the

Board of Trustees first denied Paul Bard's request for disability benefits on October 29,

2003 based upon an arbitrator's decision "which stated than an individual which had been

terminated from employment was not eligible to apply for pension."  See Minutes of

Regular Meeting of the Trustees of the BSA-ILA Pension Plan, October 29, 2003, A.R.

000045.  Mr. Bard appealed this decision before December 30, 2003.  See Letter of BSA-

ILA Plan dated December 30, 2003 ("Mr. Bard has appealed the decision of the Board

and is requesting that the Fund's attorney review whether the Trustees should allow Mr.

Bard to apply for a disability pension."), A.R. 000069.  The same Board of Trustees

"deadlocked", and according to the Board of Trustee's interpretation, did not decide Mr.

Bard's appeal of his claim for disability benefits on January 30, 2004.  See Minutes of

Regular Meeting of the Trustees of the BSA-ILA Pension Plan, January 30, 2004,

000046, and Answer to Complaint, ¶ 66.  And the same Board of Trustees voted seven to

seven, and according to the Board of Trustees' interpretation, did not decide Paul Bard's

appeal of his claim for disability benefits on February 25, 2004.  See Minutes of Regular

Meeting of the Trustees of the BSA-ILA Pension Plan, February 25, 2004, PLAINTIFF'S ORIGINALLY SUBMITTED ADMINISTRATIVE RECORD, PAGE.41 and Answer to Complaint, ¶ 66 (ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH PRODUCED BY DEFENDANT IN RESPONSE TO PLAINTIFF'S REQUEST FOR RELEVANT DOCUMENTS -- ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

.    According to the BSA-ILA Plan's Answer to Mr. Bard's Complaint, at the February 25, 2004 Board meeting, the appeal "was not decided one way or another because the vote was a deadlock."  See Answer to Complaint, ¶ 66.  On this date, the Trustees stated for the record that "if Mr. Bard's application were to be denied, he has the opportunity to present to the Trustees any further documentation he may obtain for further consideration of his application."  See Minutes of the Regular Meeting of the Trustees of the BSA-ILA Pension Plan, February 25, 2004, PLAINTIFF'S PROPOSED ADMINISTRATIVE RECORD, PAGE 41 (ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH PRODUCED BY DEFENDANT IN RESPONSE TO PLAINTIFF'S REQUEST FOR RELEVANT DOCUMENTS – ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE).

In breach of Article XIII, Paragraph 13.1, the Board of Trustees did not send a further decision to Mr. Bard within 60, nor 120 days, following the December, 2003 appeal, nor after the February 25, 2004 meeting.  See Administrative Record.  The BSA-ILA pension plan claims that it had not rendered a final decision on Mr. Bard's

application at the February 25, 2004 meeting (See Answer to Complaint, ¶ 66).

Thereafter, on June 28, 2004 Paul Bard requested in writing ("Letter Request") copies of

all documents "pertaining to Mr. Bard's rights to pension disability benefits, including

the pension plan itself, any claims filed, any documentation regarding decisions made,

any board votes, memos, reasons for denial, his personnel file, and any other documents

relied upon." See Robert E. Daidone's Letter dated June 28, 2004, P.A.R. 1;

PLAINTIFF'S ORIGINALLY SUBMITTED ADMINISTRATIVE RECORD, PAGE 1

(ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD

EVEN THOUGH DOCUMENTS OF PLAN WERE PRODUCED PURSUANT TO

SUCH LETTER); and Authorization dated June 24, 2004, A.R. 000068.  On August 16,

2004, Paul Bard requested a reconsideration of his appeal, and submitted and resubmitted

additional evidence of his condition of  "permanent and total" disability including:

Lawless & Company's three reports evidencing disability in the year 2000, Elliot Segal,

M.D.'s expert opinion regarding Mr. Bard's "permanent and total disability" while still

employed, Dr. Alba De Simone's expert opinion regarding Mr. Bard's disability while

still employed; Kishanlal Chakrabarti, M.D.'s expert opinion regarding Mr. Bard's

disability while still employed; The Social Security Administration's determination of

Mr. Bard's disability while still employed; Emma Rogers' (Counselor of Mr. Bard)

opinion regarding Mr. Bard's chemical dependency during 1999 and 2000); Dr. Alba De

Simone's updated statement of "permanent and total disability" as of 1/23/04; and Mr.

Bard's own Affidavit regarding his "permanent and total disability" as of August, 2004.

See A.R. 00090 - 000102.  At their August 25, 2004 Board meeting, the Board of

Trustees again "did not come to agreement on whether Mr. Bard was eligible to apply for

pension due to (your) termination of employment on July 23, 2001." See Letter from

BSA-ILA Pension Trust Fund dated August 26, 2004, A.R. 000103.

In summary, the documents produced in response to the Letter Request of June 28,

2004 by the BSA-ILA pension plan, together with the documents submitted by Mr.

Bard's request for reconsideration, together with the August 26, 2004 response to that

request, all attached as an Appendix to the complaint and entitled "Administrative

Record" should alone constitute the Administrative Record herein, as Mr. Bard was not

informed of a decision on his appeal by August 26, 2004, nor within 60 days after such

date, nor even within 120 days after such date.

IV.  The Supplemental Administrative Record.

As stated above, Mr. Bard defines the Administrative Record to include those

documents submitted before it filed its complaint, which it turn, include  all the

documents produced in response to Mr. Bard's Letter Request of June 28, 2004

requesting the documents relied upon by the Plan in administering his claim, together

with submissions and resubmissions of medical evidence of disability submitted by Mr.

Bard on August 16, 2004, together with the Plan's August 26, 2004 response to Mr.

Bard's request for reconsideration of the appeal.  See Mr. Bard's Objection filed on

today's date to BSA-ILA's proposed "Administrative Record."

Mr. Bard defines the "Supplemental Administrative Record" as those documents

that were generated after August 26, 2004, including those documents that are objected to

in Plaintiff's Objection to Administration Record filed on today's date.  Those documents

include:

1. The BSA-ILA pension letter of September 22, 2004, accepting service of the complaint, and requesting a stipulation for a stay.  (ELIMINATED FROM DEFENDANT'S "ADMINISTRATIVE RECORD"), S.A.R.  ____.

2. ILA's letter of December 2, 2004 indicating an arbitration date of December 20, 2004.  See S.A.R. 10, (ELIMINATED FROM DEFENDANT'S "ADMINISTRATIVE RECORD").

3. Paul Bard's letter dated December 13, 2004 regarding objection to bindingness of arbitration award and non-waiver of ERISA rights. See AR  000110.

4. ILA's letter dated December 14, 2004 regarding ILA's participation in deadlock arbitration. See AR  000113.

5. BSA's letter dated December 15, 2004, regarding notification of deadlock and arbitration date of December 20, 2004; See AR 000114.

6. Paul Bard's Emergency Motion for Temporary Restraining Order and Preliminary Injunction dated December 17, 2004; See S.A.R. 1-8; ELIMINATED FROM DEFENDANT'S "ADMINISTRATIVE RECORD."

7. BSA-ILA's letter of December 17, 2004 in response to Bard's Motion For Temporary Restraining Order, Counsel for Bard's letter, notice of no adverse Plan decision to date, agreement as to Mr. Bard's reservation of all rights and arguments, and confirmation that Mr. Bard will withdraw emergency motion for temporary restraining order.  See  AR 000116.

8. Arbitrator's decision of March 4, 2005; See AR  000118.

9. Letter of April 28, 2004 from the BSA-ILA pension plan. See AR  000129.

10. Arbitration Opinion and Award of Gerard McLaughlin dated July 15, 2002.  AR  000070.

11. Elliott Segal's Opinion of  February 23, 2004. AR.  000109.

12. Social Security Decision dated May 10, 2003. AR.  000063.

13. March 23, 2005 Board of Trustees' Vote.  AR. 000047.

14.  Letter of December 15, 2004 from Attorney Appulgliese.  AR.  000073.

Absent from the Supplemental Administrative Record is a decision on August 25, 2004 or even within 60 to 120 days following Mr. Bard's request for reconsideration by the BSA-ILA plan regarding Mr. Bard's appeal.   Mr. Bard did not waive his rights under the plan – his right to receive a decision within the date required by the plan – nor his right to pursue his remedies in federal court, following the BSA-ILA Plan's breaches.

Mr. Bard's position is that the documents in the "Supplemental Administrative Record' should therefore be stricken, and should not become part of the Administrative Record for purposes of evidence before this Court in deciding Mr. Bard's claim for disability benefits.   The actions and the one-year late decision of the plan contained within the Supplemental Administrative Record are made in breach of the plan provisions, and as a matter of equity, this Court should not allow such evidence to be considered in making a determination on Mr. Bard's claim.  Because the plan did not send a timely decision to Paul Bard regarding his appeal, any and all actions that followed August 25, 2004 should be considered to be outside the scope of the Administrative Record because they were actions that took place beyond the Plan's inherent "statute of limitations", as well as the Department of Labor's regulations' "statute of limitations."  See Article XIII, ¶ 13.1., A.R. 84), as well as the Code of D.O.L. Regulations' "statute of limitations", 29 C.F.R. 2560.503-1(i)(3)(i)).

As a matter of procedural history, and as stated above, on August 25, 2004,

the Board of Trustees, after several months of process "did not come to agreement on whether Mr. Bard was eligible to apply for pension due to "… termination of employment on July 23, 2001." See Letter from BSA-ILA Pension Trust Fund dated August 26, 2004, A.R. 000103. Mr. Bard filed suit in this case on September 7, 2004, and preserved all of his rights to argue that he had exhausted his administrative remedies under the plan as of that date. On September 17, 2004, The Board of Trustees accepted service of the complaint, indicated that an Answer was due by October 12, 2004, requested additional time to answer the complaint, and proposed that Mr. Bard agree to stay the case pending arbitration of the claim. See Letter of BSA-ILA dated September 22, 2004, PLAINTIFF'S SUPPLEMENTAL ADMINISTRATIVE RECORD, PAGE 9; ELIMINATED FROM DEFENDANT'S "ADMINISTRATIVE RECORD." Thereafter, Plaintiff's counsel agreed to additional time for filing an Answer, preserved all rights to argue that "administrative remedies had been exhausted" and "no rights waived" by Mr. Bard, and disagreed to a formal stay of proceedings before the federal district court. On December 4, 2004, Plaintiff's counsel received notice from Attorney Wanger, counsel for the International Longshoremen's Association ("ILA"), of an arbitration to be held on December 20, 2004, regarding resolution of a "trustee deadlock" on Paul Bard's "entitlement to apply for disability pension". See ILA' s Letter dated December 2, 2004, PLAINTIFF'S SUPPLEMENTAL ADMINISTRATIVE RECORD, PAGE 10. On December 13, 2004, Plaintiff's counsel again refused "to waive any of Mr. Bard's rights" and reserved "any and all rights that Mr. Bard has with respect to his ERISA benefits." See A.R. 000110. On December 15, 2004, counsel for Boston Shipping Association, the employer (not the BSA-ILA Plan) notified Plaintiff's counsel that an arbitration was

scheduled for December 20th regarding whether Mr. Bard was "eligible to apply for disability retirement under the plan." See A.R. 000114. On December 17, 2004, Mr. Bard filed a motion for temporary restraining order in this Court, for the purpose of requesting that the arbitration be stayed until the parties clarified that Mr. Bard's rights would not be determined as final and binding, and that all of Mr. Bard's rights (with respect to exhaustion of administrative remedies and otherwise) would be preserved. See Motion For Temporary Restraining Order, ¶ 30 ("Mr. Bard does not consent to a binding arbitration decision, or otherwise, to a release of its claim in this lawsuit that administrative remedies have been exhausted…") SEE COURT DOCKET AND PLAINTIFF'S SUPPLEMENTAL ADMINISTRATIVE RECORD PAGES 1-8; ELIMINATED FROM DEFENDANT'S "ADMININSTRATIVE RECORD." On December 17, 2004, Counsel for BSA-ILA recognized in writing that Mr. Bard's rights would be preserved, and not waived, and that any decision of the plan would not be final and binding on Mr. Bard if the motion for temporary restraining order were not heard. See December 17, 2004 letter. See A.R. 000116. The motion was not set for hearing, based upon these representations.

On December 20, 2004, the Board held a meeting before an arbitrator with its request for the arbitrator to determine "Whether or not Paul Bard is eligible to apply for a disability pension?" See Award of Arbitrator dated March 4, 2004, A.R. 000118. On March 4, 2004, the arbitrator determined that Mr. Bard was eligible to apply for disability benefits  (See Award of Arbitrator dated March 4, 2004), and presented a "directive" to the Board of Trustees (seemingly beyond the scope of the Arbitrator' duties) the

substance of the directive was incorrect as a matter of law (see below).  Approximately

March 31, 2004, Counsel for the ISA-BLA Plan verbally informed Counsel for Paul Bard

that the Trustees denied the Plaintiff's application for benefits. On April 21, 2004, still

not in receipt of a letter of decision from the BSA - ILA Plan, Plaintiff filed his Amended

Complaint in this lawsuit.  On April 28, 2004, *after* Mr. Bard filed and served an

Amended Complaint upon the BSA-ILA Plan, the Plan sent a denial letter to Mr. Bard

stating that the Board of Trustees denied Mr. Bard's disability benefits for the following

reason:  "Pursuant to Article VIII (Disability Benefits), sec. 8.1 the Board of Trustees, in

its sole judgment, found that the applicant, Mr. Paul Bard, was not totally and

permanently disabled prior to his termination."  See BSA-ILA Letter dated April 28,

2005 attached hereto as  A.R. 000129.  The same letter gives Mr. Bard the right to appeal

the decision within 60 days, but does not provide specific reasons for denial of the claim

beyond what is stated above.   Because the BSA-ILA Plan has waived "exhaustion of

administrative remedies" as an affirmative defense in this lawsuit (See Answer to

Complaint, ¶¶ 122 -126),  and Mr. Bard had clearly exhausted his remedies before filing

this suit, Mr. Bard has refrained from further pursuit of his claim under the Plan, and

instead asks this Court to resolve the controversy at hand.

V.        No Extrinsic Evidence Should Be Allowed to
          <u>Supplement The Administrative Record</u>.

          The Administrative Record, whether it be defined as Paul Bard requests (see

above), or whether it be supplemented by the "Supplemental Administrative Record" as

defined above, the latter of which contains actions of the Board that are after the "statute

of limitations" inherent in the Plan has run, is the sole evidence in this case.  See <u>Leahy v.</u>

Raytheon Company, 315 F. 2d 11 (1st Cir. 2002), quoting from McCarthy v. N.W.

Airlines, Inc., 56 F. 2d 313, 314-15 (1st Cir. 1995).  "In an ERISA benefit denial case,

trial is usually not an option:  in a very real sense, the district court sits more as an

appellate tribunal than as a trial court.  It does not take evidence, but rather evaluates the

reasonableness of an administrative determination in light of the record compiled before

the plan fiduciary."  See also Recupero, 118 F. 3d at 831. "In making this determination,

we look to the record as a whole:  "the whole record consists of that evidence that was

before the administrator when he made the decision being reviewed."  Cook v. Liberty

Life Assurance Company of Boston, 320 F. 3d 11 (1st Cir   2003); See Also, Mitchell v.

Eastman Kodak Co., 113 F. 2d 433 (3d Cir. 1997).


        Thus, the Administrative Record is the evidence that was before the Board of

 Trustees, when it made its decision.  In this case, we advocate that it is the

Administrative Record that was before the Board of Trustees when it failed to render a

timely decision, and contained in the Appendix attached to this lawsuit entitled

"Administrative Record."  But if this Court decides that the Supplemental Administrative

Record, as defined herein, is to become part of the Administrative Record for evidentiary

purposes, then the Administrative Record as supplemented with such, should become the

entire Administrative Record, with no extrinsic evidence allowed to supplement it.

Because the BSA-ILA plan was required to provide its specific reasons for denial of Mr.

Bard's claim with its decision of denial (See 29 C.F.R. 503-1(g)), no other extrinsic

evidence should be allowed to be brought before this Court.

VI.     The Administrative Record Evidences
        <u>"Permanent and Total Disability" Without Question</u>.

The Administrative Record in this case evidences "permanent and total disability"

of Mr. Bard without question.  The Administrative Record includes: Lawless &

Company's three reports evidencing disability in the year 2000, Elliot Segal, M.D.'s

expert opinion regarding Mr. Bard's "permanent and total disability while still employed,

Dr. Alba De Simone's expert opinion regarding Mr. Bard's disability while still

employed; Kishanlal Chakrabarti, M.D.'s expert opinion regarding Mr. Bard's disability

while still employed; The Social Security Administration's determination of Mr. Bard's

disability while still employed; Emma Rogers' (Counselor of Mr. Bard) opinion

regarding Mr. Bard's chemical dependency during 1999 and 2000; Dr. Alba De Simone's

updated statement of "permanent and total disability" as of January 23, 2004; and Mr.

Bard's own Affidavit regarding his "permanent and total disability" as of August, 2004.

See A.R.  000090 - 000102.

        All of the expert opinions relied upon by Mr. Bard are treating physicians or

treating medical personnel.  No non-treating physician opinions are relied upon.  Other

evidence Mr. Bard relies upon is the adjudicatory opinion of the Social Security

Administration, which found that Mr. Bard was disabled before his employment

termination.

        On the relevant date of August 26, 2004, and thereafter following for a period of up

to 120 days, the Administrative Record contains no Board of Trustee's decision regarding

Mr. Bard's condition of disability, nor a decision on Mr. Bard's claim, but rather, only contains the following statement in a letter from the plan administrator: "...The Trustees of the BSA-ILA Pension Trust Fund reviewed your request for reconsideration for disability pension at their meeting held on August 25, 2004. The Trustees did not come to agreement on whether you are eligible to apply for pension due to your termination from employment on July 23, 2001. As the Trustees could not come to agreement, they have submitted your request to Fund Attorney to determine whether this disagreement is an issue which may be arbitrated..."

The issue on August 25, 2004 was the same issue that was given as a reason for denial of Mr. Bard's disability pension at the Board of Trustees' October 29, 2003 hearing, subsequently appealed by Mr. Bard before December 30, 2003, and considered at the Board of Trustees' January 30, 2004 hearing, and not further addressed after the Board of Trustees' February 25, 2004 hearing until Mr. Bard requested a reconsideration of his appeal on August 16, 2004, much beyond the date for decision as required by Article XIII, Paragraph 13.11 of the plan: "The Board *must* render a decision regarding the appeal of the claimant no later than sixty (60) days after a claimant's request for review was received. However, if there is a need to hold a hearing, a decision is to be rendered not later than one hundred twenty (120) days after the receipt of the request for review. (emphasis supplied).

It should be pointed out that the Plan's directive is mandatory, not permissive i.e. the Board <u>must</u> render a decision...<u>no later than 60 days</u>. The Board should not gain additional rights as a consequence of its breach of the Plan's provisions.

No decision was made by the Board of Trustees by the date *required* and after Mr. Bard's request for reconsideration -- August 25, 2005 -- and on such date, the Administrative Record contains medical evidence of Mr. Bard's disability while still employed by Boston Shipping Association, and at the same time, provides no medical evidence counter to that evidence. Judgment should therefore enter for Mr. Bard: the record reflects that he was a Participant in the plan, he had over 15 Years of Service, and he became permanently and totally disabled. Because he became permanently and totally disabled while still working, he is entitled to minimum benefits commencing from his date of termination, July 23, 2001 until the present date, together with reasonable attorneys fees, pre-judgment and post-judgment interest, and costs.

VII.  Even the Administrative Record Supplemented by The Supplemental Record, Evidences "Permanent and Total Disability" Without Question.

The Board of Trustees finally determined on March 4, 2005 that Paul Bard was "eligible to apply" for disability benefits under the Plan. But according to the Plan's letter sent to Mr. Bard on April 28, 2005, the Board decided to deny Mr. Bard's claim for disability benefits. It states: "Pursuant to Article VIII (Disability Benefits) sec. 8.1 the Board of Trustees, in its sole judgment, found that the applicant, Mr. Paul Bard, was not totally and permanently disabled prior to his termination." The decision does not provide further evidence or get more specific than the conclusory statement itself. See Letter dated April 28, 2005, 000129. The letter of decision violates the Department of Labor regulations. See Discussion under "Administrative Record" above.

Once again, all opinions relied upon by Mr. Bard – as opposed to the Plan -- are from *treating physicians* or medical personnel of Mr. Bard.  While the First Circuit may not have established a formal position on the relative weight to be given to a treating physician's opinion, the Ninth Circuit gives great weight to a treating physician's opinion; it applies the treating physician rule.  See Leahy v. Raytheon Company, 315 F. 2d 11 (1st Cir.  2002)("This court has not yet taken a definitive position as to the applicability *vel non* of the treating physician rule in ERISA cases, and we see no need to do so today" at 20).; Regula v. Delta Family Care Disability Survivorship Plan, 266 F. 3d 1130, 1139 (2001). And further, The Social Security Administration's positive finding of Mr. Bard's "disability" retroactive to July 22, 2001 by The Social Security Administration, an adjudicated decision, is given weight in this matter.  See Leahy v. Raytheon Company, supra. (The Court in that case takes the Social Security Administration's decision into account:  "The rejection of his claim by the Social Security Administration, while not dispositive of his effort to secure disability benefits under the Plan, is some evidence that he was not fully disabled." at 19-20).

.

The Board of Trustees of the BSA-ILA Pension Plan did not request to depose any of Paul Bard's physicians, request that Paul Bard be examined by an independent medical doctor, or otherwise request further information, in order to evaluate Mr. Bard's "permanent and total disability."  See Administrative Record. The Administrative Record, as supplemented by the Supplemental Administrative Record, does not provide sufficient counter–evidence to justify a claim denial of Mr. Bard's claim..

VIII.  The Arbitrator's Directive Provided to the Board of Trustees
      Is Flawed, and Therefore the Board of Trustees' Decision Should Be Vacated.

The decision of the Board purports to rely upon a directive of the arbitrator, issued on March 4, 2005, regarding the issue of "whether (Mr. Bard) became so "totally and permanently disabled *while still an employee* under the BSA/ILA collective bargaining agreement."  But the arbitrator's directive on this issue is not binding nor relevant, as Mr. Bard and the BSA-ILA Plan agreed that no decisions of the arbitrator would be binding on Mr. Bard.   See Letter of Paul Bard dated December 13, 2004 (A.R. 000110); and Letter of  BSA-ILA Plan dated December 17, 2004 (A.R. 000115).  Mr. Bard and the BSA-ILA Plan had an agreement in writing that no rights would be waived by consenting to an extension by which an answer in this lawsuit could be filed by the Plan.  Id.  Thus, the arbitrator's directive is not relevant or binding on Mr. Bard.

The issue of *when* Mr. Bard became "permanently and totally" disabled, however, is relevant in the sense that disability payments, if granted, would need to be calculated from a specific date.  In this lawsuit, Mr. Bard has sought retroactive payments since the date he was terminated from employment, July 23, 2001.

While plan language exists in other plans requiring one to be an *employee* when one becomes disabled, that is not the case here.  See Skretvedt v. E.I Dupont De Nemours and Company, 268 F. 2d 167 (2001)(Plan language read:  "An *employee* may be retired by the Company if the Board of Benefits and Pensions finds that he has come, for any reason, permanently and incapable of performing the duties of his position with

the degree of efficiency required by the Company, and he has at least 15 Years of Service (emphasis supplied)"); See also Radford Trust v. First Unum Life Insurance Company of America, Civil Action No. 02-12477-WGY (Dist. Of Mass. 2004)("Active employment" was defined to mean that …the *employee must be working*…for the employer on a full time basis and paid regular earning (temporary or seasonable employees are excluded (and) at least (30) hours (per week)…).

Here, Article VIII of the BSA-ILA plan provides that "In the event that a *Participant* who has completed fifteen (15) Years of Service becomes totally and permanently disabled, such *Participant* shall be entitled to a disability benefit… (emphasis supplied)"    Because Mr. Bard is a *vested Participant*, having approximately 30 years of service, he cannot be reclassified and reduced to "non-Participant" status, so as to avoid Article VIII.

ERISA defines "participant" as "any employee or former employee of an employer…who is or may become eligible to receive a benefit of any type from an employee benefit plan…or whose beneficiaries may be eligible to receive any such benefits." 29 U.S.C. Section 1002(7). The term "participant" has the same meaning under all sections of ERISA. Heimann v. National Elevator Industrial Pension Fund, 187 F. 2d 493, 504 (5th Cir. 1999)(overruled on other grounds). A plan participant should be able to rely upon ERISA's definition in assessing his rights.

Also, the words of the BSA-ILA Plan are plain and unambiguous. According to Paragraph 3.22 of the Plan, "Participant" shall mean an Employee *who has met* the requirements of eligibility to participate in the Plan (emphasis supplied). This would include both employees and former employees. According to 3.12 of the Plan, "Employee" shall mean (a) each individual who *now, or hereafter is* employed as a Longshoreman… The Plan was adopted on September 27, 1978, and at that time, Mr. Bard had been an employee for approximately 4 years, and thereafter, he was continually employed for another approximately 26 years. Thus, he was an "employee" *now* … employed *when the Plan was adopted.* According to Paragraph 5.1 of the Plan, an employee becomes eligible for participation on his Entry Date. Thus, Mr. Bard was a Participant in the plan since the Plan's adoption, and has remained a Participant ever since.

Further, the BSA-ILA Plan admits that Mr. Bard is a Participant in the Plan in its Answer to the complaint. In Paragraph 8 of the complaint, Paul Bard alleges: "Paul Bard was a Participant in the BSA-ILA Plan for at least 30 years." The BSA-ILA's Answer is "Admit." See BSA-ILA Pension Plan's Answer to Complaint, ¶ 8. The Plan also admits that he is *still* a Participant: Mr. Bard alleges that "On April 20, 2005, the date of Plaintiff's Amended Complaint, Paul Bard was still a Participant in the BSA-ILA Pension Plan ." The BSA-ILA's Answer is "Admit." See BSA-ILA Pension Plan's Answer to Complaint, ¶ 17. And according to the BSA-ILA Pension Plan, Mr. Bard is a "vested" Participant in the BSA-ILA Pension Plan. See A.R. 47).

The Plan specifically refers to several types of Participants in the Plan, and each one is entitled to their respective rights of benefits: "terminated Participant" (See ¶ 9.1 of the Plan: those no longer employed), "retired Participant" (See ¶ 9.4 of the Plan: those no longer employed but retired), "Any participant" (See ¶ 13.11)(open term); a "disabled Participant" (See ¶ 8.2: those no longer employed because of disability); The Plan provides for allocations of benefits "for a Participant whose employment terminated…" (See e.g. Article XVII, ¶¶ 17.2(b) and 17.2(c))(those no longer employed); according to the Plan's language, these persons with different statuses are still all considered "Participants."

The Summary Plan Description booklet applies to "members" of the BSA-ILA Plan ("As a member of the Boston Shipping Association-International Longshoremen's Association Pension Plan, you have a head start…", see page 4); See P.A.R. 6; ELIMINATED FROM DEFENDANT'S PROPOSED ADMINISTRATIVE RECORD EVEN THOUGH SUMMARY PLAN DESCRIPTION WAS CIRCULATED TO PARTICIPANTS IN THE PLAN - ELIMINATION FROM ADMINISTRATIVE RECORD OBJECTED TO ON TODAY'S DATE   The Section entitled "Total and Permanent Disability" applies "to members of the BSA-ILA Plan"; "members" is another word for "participants."

Because the Board of Trustees was incorrectly advised that, in order to approve Mr. Bard's claim it must "make a decision on the potentially difficult substantive issues of (1) whether Bard in fact is "totally and permanently disabled" within the meaning of the Plan by virtue of mental illness, or drug addiction, or a combination of the two, and (2) whether he became so "totally and permanently disabled" *while still an employee* under

the BSA/ILA collective bargaining agreement," the Board's decision should be vacated.
The test is not whether the disabled person is an "employee" at the time of the disability,
but whether the person is a "participant" at such time.  In light of the arbitrator's
directive, the Board of Trustees was advised incorrectly.   Mr. Bard did not need to
become disabled *while still an active employee* of the Boston Shipping Association in
order to collect disability benefits; he needed to be only a Participant that became
disabled.

    Mr. Bard is still a "Participant," that is vested in the plan, and is entitled to
"permanent and total disability" benefits even if he became disabled *after* he became
unemployed, provided that he fulfilled the 15 Years of Service requirement. See ¶ 8.1 of
the Plan.

    Thus, the "directive" submitted to the Board of Trustees for consideration was
incorrect, and the decision of the Board of Trustees should be stricken.

    Because the decision was tardy by many months, Mr. Bard respectfully requests
that the Court not remand this case to the Board of Trustees, but decide this case on a <u>de
novo</u> basis, on the Administrative Record.

IX.    <u>This Court May Make a Retroactive Award of Payments.</u>

    It a Court finds that an administrator has acted arbitrarily and capriciously in
denying a claim for benefits, the Court can either remand the case to the administrator for

a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits.   See <u>Cook v. Liberty Life Assurance Co. of Boston</u>, 320 F. 3d 11 (1st Cir. 2003).   While argument exists that ERISA provides no authority for a court to award a <i>de novo</i> determination of benefits, <u>Id</u>. "this axiom underlying the principle of ERISA deference does not deprive a court of its discretion to formulate a necessary remedy when it determines that the plan has acted inappropriately."   <u>Id</u>. "Retroactive reinstatement of benefits is appropriate in ERISA cases where …but for the insurer's arbitrary and capricious conduct, the insured would have continued to receive the benefits or where there was no evidence in the record to support a termination or denial of benefits..."  See <u>Id</u>. (quoting <u>Grosz-Salomon</u>, 237 F. 2d at 1163); "A remand of an ERISA action seeking benefits is inappropriate where the difficulty is not that the administrative record was incomplete, but that a denial of benefits based on the record was unreasonable.") See <u>Id</u>. (quoting <u>Zervos</u>, 277 F. 3d 648); "A plan administrator will not get a second bite at the apple when its first decision was simply contrary to the facts."; See Id. (quoting <u>Grosz-Salomon</u>, supra.).

In this case, the BSA-ILA acted improperly by its failure to follow the Plan's provisions.  It failed to render a timely decision on Mr. Bard's appeal.  No decision existed after Mr. Bard exhausted his administrative remedies.   And when it ultimately rendered a decision late by over a year, the decision was simply contrary to the facts, and arbitrary and capricious.  Therefore, Mr. Bard requests that this Court award Mr. Bard his benefits retroactively to July 23, 2001, the date of his employment termination.

X.  In Addition to Retroactive Benefits, The Court May Also Award
    Pre-Judgment Interest, Post-Judgment Interest, Attorneys Fees and Costs.

    In addition to retroactive benefits, this Court may also award pre-judgment

interest, post-judgment interest, attorneys fees and costs.


    1.  Pre-Judgment Interest.

    This Court may award pre-judgment interest.  See Radford Trust v. First Unum Life

Insurance Company of America, Civil Action No. 02-12477-WGY (Dist. Of Mass.

2004).  District Courts have considerable discretion in determining whether to award

interest, as well an appropriate period and rate.  See Radford, Id., citing Cottrill, 100 F.

2d 223.  The purpose of awarding pre-judgment interest to a claimant is to make the

claimant whole and to prevent unjust enrichment.  See Radford, Id.  Mr. Bard requests

pre-judgment interest from the date of his termination, July 23, 2001, until the date that

he obtains judgment in this case, at the Massachusetts statutory rate of 12% per annum.

See Radford, Id.


    2.  Attorney's Fees.

    This Court may also award attorneys fees, but this is not obligatory.  See Radford,

Id. at 73.  In the Radford case, the Court considered a five-factor test:  (1) the degree of

culpability or bad faith attributable to the losing party; (2) the depth of the losing party's

pocket i.e. his or her capacity to pay award; (3) the extent (if at all) to which such an

award would deter other persons acting under similar circumstances; (4) the benefit (if

any) that the successful suit confers on plan participants or beneficiaries generally; and

(5) the relative merits of the parties' positions.  See Radford, at 73.  The Court in Radford

awarded attorneys fees based upon "First Unum's practice of denying valid claims based on an erroneous and highly restrictive interpretation of the Policy."  See <u>Radford</u> at 74.

    3.  <u>Costs</u>.

    The analysis for costs is essentially the same as for attorneys fees.  See <u>Radford</u>. <u>Id</u>. at  74.

    4.  <u>Postjudgment Interest</u>.

    The Court in Radford awarded postjudgment interest at the federal statutory rate. See <u>Radford,</u> <u>Id</u>. at 75; and 28 U.S.C. 1961(a).

XI.  <u>Conclusion</u>.

    For the reasons stated, Plaintiff Paul Bard requests that this Court apply a *de novo* standard of review, determine that the Administrative Record is as it stood on August 25, 2004, estop the BSA-ILA plan from supplementing the record after such date, disallow extrinsic evidence to otherwise be entered into the Administrative Record, find that Paul Bard was totally and permanently disabled as of July 23, 2001, and award Mr. Bard retroactive benefits back to July 23, 2001, together with pre-judgment interest, attorneys fees, costs and postjudgment interest.

August 28, 2005

PAUL BARD,
By His Attorney,

(signature on file with the Court)
_____
Robert E. Daidone, Esq.
BBO# 544438
44 School Street
Suite 500
Boston, MA  02108
(617) 722-9310

<u>CERTIFICATE OF SERVICE</u>

I, Robert E. Daidone, Esq. hereby certify that I served the above on Defendant's counsel by filing such electronically on the U.S. District Court's system on this 28th day of August, 2005.

(signature on file with the Court)
_____
Robert E. Daidone, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
PAUL BARD,                                    )
                                              )
          Plaintiff,                          )          CIVIL ACTION
                                              )
v.                                            )          NO. 04-11946-NMG
                                              )
BOSTON SHIPPING ASSOCIATION –                 )
INTERNATIONAL LONGSHOREMEN'S                   )
ASSOCIATION PENSION PLAN,                     )
a/k/a BSA-ILA PENSION PLAN,                    )
a/k/a BSA-ILA TRUST FUND,                      )
                                              )
          Defendant,                          )
_____)

MOTION FOR WAIVER OF PAGE LIMITATION
UNDER LOCAL RULE 7.1(b)(4)


          Plaintiff, Paul Bard, requests that this Court waive the page limitation otherwise

imposed on the Memorandum submitted with the Motion For Judgment on the Pleadings

And/Or Motion On the Case Stated And/Or Motion For Summary Judgment in Whole or

Part.  In support thereof, Plaintiff states that the Memorandum supports three alternative

motions, and the matters are complex.


August 28, 2005

                                        PAUL BARD,
                                        By His Attorney,

                                        (signature on file with the Court)
                                        _____
                                        Robert E. Daidone, Esq.
                                        BBO# 544438
                                        44 School Street
                                        Suite 500
                                        Boston, MA  02108
                                        (617) 722-931