UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL BARD,<br>    Plaintiff<br><br>v.<br><br>BOSTON SHIPPING ASSOCIATION-<br>INTERNATIONAL LONGSHOREMEN'S<br>ASSOCIATION PENSION PLAN, a/k/a<br>BSA-ILA PENSION PLAN, a/k/a<br>BSA-ILA TRUST FUND,<br>    Defendant, | )<br>)<br>)<br>)<br>)<br>)  Civil Action<br>)  No. 04-11946-NMG<br>)<br>)<br>)<br>)<br>)<br>) |

<u>Defendant's Opposition To Plaintiff's Renewed Motion For Judgment On The Pleadings And/Or The Case Stated And/Or For Summary Judgment In Whole Or In Part, And In Opposition To Plaintiff's Objection To Defendant's Administrative Record, And In Support Of Defendant's Cross-Motion For Judgment As A Matter Of Law</u>

Defendant hereby Opposes Plaintiff's Motion for judgment as a matter of law, however framed, and moves for judgment as a matter of law in its favor.

**Introduction**

This is a garden variety denial of benefits case under the Employee Retirement Income Security Act of 1974, commonly known as "ERISA." 29 USC §§1001 <u>et</u> <u>seq</u>. The key issue, despite the many peripheral issues raised by the Plaintiff, is whether or not under the Plan the Plaintiff was "totally and permanently disabled" <u>while he was employed</u>. The Plan's position in a nutshell is that since the Plaintiff worked up until the date of his discharge for failing a drug test, and was terminated for failing the drug test (not for any performance-based reason), that he

-1-

simply could not have been totally and permanently disabled while employed. Moreover, the Plaintiff's medical "evidence" is inconsistent and contradictory to both his own statements and to prior medical documentation.

**Factual Background**

There is not much factual dispute, if any, in this case. For purposes of these motions, the Defendants adopt the Plaintiff's Statement of Uncontested facts except as follows:

#1 - Defendant agrees that the Plaintiff's service history may be part of the Administrative Record;

#2 - Defendant agrees that the letter advising Plaintiff of his termination may be part of the Administrative Record;

#9 - Whether the Plaintiff was advised by anyone other than the Plan not to file a disability claim is irrelevant and, in any event, not attributable to the Defendant Plan, who is the only proper defendant in this case;

#10 - While there are medical documents indicating medical provider opinions that the Plaintiff was totally and permanently disabled on the date of his termination, all such reports were submitted after the Trustees refused to accept the Plaintiff's application. Documents provided previously, by some of these same providers, did not indicate that the Plaintiff was totally and permanently disabled as of the date of his termination and in fact indicated the contrary. See Administrative Record ("AR") 52, 53, 54, 55-56, 76-84, and compare with AR 90-97;

#11-18 - see #10, above;

#20 - The Plan believes that the record does contain evidence justifying the denial of benefits

because it is reasonable to conclude that an individual, who worked with no performance-based problems up until the date of his discharge, was not totally and permanently disabled from his usual employment as a crane operator while he was employed. Moreover, the revisions to the Plaintiff's medical providers' opinions raise a fair suspicion;

#22 - The Plan's position is that the record does not establish that the Plaintiff was totally and permanently disabled while he was employed;

#23-27 - The Plan's position is that the threshold issue was whether or not the Plaintiff could even apply for a disability pension post-employment, and had a prior arbitration decision reasonably supporting that position. AR 70-71. Defendant has no objection to including the referenced documents as part of the Administrative Record. The Trustees deadlocked on the Plaintiff's ability to apply for a disability pension, and that matter was arbitrated. AR 103, 118-128. It should be noted that the only thing decided by the arbitrator was that a former employee who <u>claimed</u> that his total and permanent disability occurred prior to his termination could <u>apply</u> for a disability pension; the arbitrator specifically refused to rule on the merits of such an application. AR 128;

#28-29 - The Plan's position is that since there was no decision on actually awarding the Plaintiff a disability pension or not, Article XIII of the Plan does not apply;

#30-31 - The Plan has no objection to inclusion of the referenced documents as part of the Administrative Record;

#35 - The Plan's position is that no action was required because the arbitration was pending;

#37 - The Plan does not object to inclusion of this document in the Administrative Record, but notes that the Administrative Record generally does not contain any court documents but only

documents before the Trustees;

#41 - The Plan does not object to the inclusion of court documents as part of the record of this case, but notes that said documents were never before the Trustees.

**Argument**

    1.    **Arbitrary And Capricious Is The Proper Standard Of Review**

In *Celi v. Trustees of Pipefitters*, 975 F.Supp 23 (D.Mass 1997), a participant sued over a decision to deny him disability retirement. The district court held that "where the plan documents give the trustees 'discretionary authority' to construe the Plan's terms," the trustee decisions would be overturned only if arbitrary, capricious, or an abuse of discretion." See also *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 190 S.Ct. 948 (1989); *Diaz v. Seafarers Intl. Union*, 13 F.3d 454 (1st Cir. 1994). The arbitrary and capricious standard has been defined as if a decision was "within the Plan's administrative authority, reasoned, and supported by substantial evidence in the record," the decision would be upheld. *Ivy v. Raytheon Employees Disability Trust*, 307 F.Supp. 2d 301 (D.Mass. 2004). "Substantial evidence" is that being "reasonably sufficient to support a conclusion." Id. Plaintiff admits that the Plan documents give the Trustees the discretionary authority necessary to merit the arbitrary and capricious standard, at least in the first instance.

Plaintiff, however, argues for a de novo standard of review due to what he claims is an untimely determination of Plaintiff's eligibility for a disability pension. While the Plaintiff may be correct on the lat, this claim is misplaced on the facts of this case. It is true there was a period of time in which the Trustees deadlocked or otherwise could not decide on the Plaintiff's

eligibility to <u>apply</u> for a disability pension, but once that question was settled by the arbitrator the Plan's timelines were adhered to and the Plaintiff does not argue differently. The Plan provisions for timelines about eligibility determinations apply to determinations about eligibility for pensions, not about eligibility to <u>apply</u> for pensions. The Plan had a reasoned basis for denying the Plaintiff's eligibility for applying for a disability pension and reasonably relied on a prior arbitration award. AR 70-71. The fact that the arbitrator in the instant case determined differently on these facts does not make the Trustees' reliance on that prior arbitration award any less reasonable. In fact, the arbitrator stressed that he was deciding only the Plaintiff's ability to apply for a disability pension, not whether he was eligible for such a pension. AR 128. The Plaintiff's request for a disability pension was not denied until March 23, 2005. AR 47-48, 129-130. The Trustees also noted that the Plaintiff certainly was eligible to apply for a regular pension when he reached age 65. <u>Id</u>.

2. **Under An Arbitrary And Capricious Standard, The Defendant Is Entitled To Judgment As A Matter Of Law**

The Plan's basic position is that the Plaintiff, while he may be totally and permanently disabled today, was not totally and permanently disabled during his employment from his occupation as a crane operator because he worked up to the date of his drug test and discharge. AR 121. He was discharged for failing a third drug test, not because he had performance issues or otherwise could not perform the essential functions of his job. In *Sullivan v. Neiman Marcus Group, Inc.*, 358 F.3d 110 (1st Cir. 2004), the First Circuit ruled that an employee who had worked up until the date of his termination could not claim to be "disabled" (because he was an alcoholic) within the meaning of the Americans With Disabilities Act, even though he was

terminated for the use of alcohol.

Here, the Plan simply applied the same commonsense notion as the *Sullivan* Court. That is, an employee who works up until the time he fails a drug test, and who is terminated on the basis of that drug test, cannot then claim to have been totally and permanently disabled prior to his termination. The Plaintiff's own medical provider reports are telling in this respect. First, in a letter dated November 27, 2002, Drs. Simone[1] and Chakrabarti state that the Plaintiff had been suffering from depression since December, 2001, a date well <u>after</u> the Plaintiff's termination. AR 55-56, 83-84. After his application was rejected, however, Plaintiff produced another letter from these same doctors dated June 23, 2004, in which they stated that the Plaintiff had been suffering from depression since March 21, 2000, a date prior to Plaintiff's termination. AR 96-97. The Plan maintains that it is entitled to view such a changed medical opinion with a jaundiced eye. Moreover, the Attending Physician's Statement filled out by Dr. Simone, AR 100, states that Dr. Simone had only been treating with the Plaintiff since March 8, 2002. Finally, in their June 23, 2004, letter (AR 96-97), these doctors state only that "The patient is permanently and totally disabled <u>at this time</u>." (Emphasis supplied).

Similarly, the letter from Dr. Segal, AR 95, claims that the Plaintiff was totally and permanently disabled prior to his date of termination of July 23, 2001, but this physician also states that he never even saw the Plaintiff until October 2, 2001, several months <u>after</u> his termination. <u>Id</u>. This doctor was never even referenced in Plaintiff's original application. AR 50-61. There also is no indication from this doctor that he had any idea of what the Plaintiff did for a living or that he evaluated the Plaintiff vis a vis the essential functions of his crane operator

---

[1]    Who actually is a Ph.D, not a medical doctor. AR 53, 55-56, 80, 83-84.

position. Again, the Plaintiff's documents from the Social Security Administration are of the same ilk, developed well after the Plaintiff's failed drug test and termination, and stand only for the proposition that he may have become totally and permanently disabled at some point after his termination. Finally, just because some medical provider opines that a person is totally and permanently disabled does not necessarily mean that the same individual is totally and permanently disabled within the meaning of the Plan.

Moreover, the document provided by Lawless & Co., AR 77-78 and 93-94, states that Ms. Lawless only saw the Plaintiff 3 times in March of 2000, well over a year before his termination in July, 2001. In that letter Ms. Lawless (who is not a doctor but appears to be a licensed mental health counselor) clearly states that "Exit diagnosis still unclear." AR 78, 94. At that time the Plaintiff reported to Ms. Lawless that he was "drug free and only wants to get back to work." AR 77, 93. He told her that he "was currently drug free and that he had been agitated like that all his life." Id. Thus this document offers no support whatever for Plaintiff's claim that he was totally and permanently disabled prior to his termination - in fact, it shows that the Plaintiff believed himself capable of performing the essential functions of his job since he wanted so bad to get back to work. Thus he cannot have been totally and permanently disabled at that point in time.

Finally, there is the Plaintiff's own statement, AR 52, in which the Plaintiff himself stated that it was only since his termination that he was "diagnosed with Manic Depression, which the doctor felt was an ongoing problem for many years." It may have been an ongoing problem for many years, but even if so that does not make the Plaintiff totally and permanently disabled within the meaning of the Plan prior to July, 2001.

That is, there are enough inconsistencies, contradictions, and changed views, in the statements of the Plaintiff and the Plaintiff's medical providers to raise a fair question of their legitimacy as to the issue of whether or not the Plaintiff was totally and permanently disabled as a crane operator as of July, 2001, the date of his drug test and termination. And some documentation, such as the Lawless letter, offers no support whatever. There is no contemporaneous medical view that the Plaintiff was totally and permanently disabled from his occupation - all the views are after the fact, which to the Plan is a telling fact in itself. See, e.g., *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669 (7th Cir. 2004)(plan did not act arbitrarily and capriciously when it refused to consider post-denial diagnoses from medical providers). In fact, the only medical provider who actually treated with the Plaintiff prior to his termination was Ms. Lawless, and she had no diagnosis and the Plaintiff was telling her he wanted to go back to work. So it is impossible to conclude from the only pre-termination medical provider that the Plaintiff had a total and permanent disability prior to his termination; everyone else opined about the effective date of total and permanent disability not only well after Plaintiff's termination, but after his application was originally rejected. Coupled with the fact that the Plaintiff worked up until his last drug test and termination, it was eminently reasonable on these facts for the Plan to conclude that the Plaintiff was not totally and permanently disabled within the meaning of the Plan while still an Employee.

3.  **Even Under A De Novo Standard Of Review, The Defendant Is Entitled To Judgment As A Matter Of Law**

For all the same reasons as noted above in #2, the Plan is entitled to judgment as a matter of law even under a de novo standard. The later medical provider opinions obviously are made

up to achieve a disability date for the Plaintiff of prior to July, 2001. There is no contemporaneous medical view anywhere in the record that the Plaintiff was totally and permanently disabled from his occupation when he was terminated or prior to his termination. He worked up until his final drug test and discharge. While he may be totally and permanently disabled today, even within the meaning of the Plan, that does not mean he was totally and permanently disabled within the meaning of the Plan prior to his discharge, which is what he had to show to be entitled to a disability retirement benefit. Thus under either standard, the Plan is entitled to judgment as a matter of law.

4. **The Plan Requires That The Total And Permanent Disability Occur While Employed**

This is a late-raised issued by the Plaintiff. Nevertheless, the answer ignored by Plaintiff is very simple. Section 3.22 of the Plan (AR 17) defines a "Participant" in the Plan as "an Employee who has met the requirements of eligibility to participate in the Plan." "Employee," in turn, is also a defined term in Section 3.12 of the Plan, and is defined as "each individual who now, or hereafter is employed as a Longshoreman, Clerk, or Linehandler in the industry and is a member of the ILA and for whom an Employer is required to make contributions to the Trust Fund". AR 14. This is in contrast to the Plan's use of the term "terminated Participant" in Section 9.1 (AR 24-25), wherein the Plan describes the procedure for Participants who have been terminated.

Thus to be eligible for a disability retirement benefit, the individual must be an active employee when he/she becomes totally and permanently disabled. This generally happens as a result of a workplace accident, or while such an employee is on a leave of absence and has not

terminated employment, such as under the Family Medical Leave Act or under the Collective Bargaining Agreement. Employees terminated for cause, such as the Plaintiff, are no longer Employees within the meaning of the Plan and thus are not eligible for a disability pension. Quite simply, they did not become totally and permanently disabled while an employee.

Moreover, this only makes sense from a commonsensical perspective. Otherwise any employee with 15 years in who leaves employment on the docks before they turn 65 and at some point becomes disabled even if years after leaving employment would be eligible for a disability pension whenever that total and permanent disability occurred. The Trustees reasonably read and interpret the Plan to require that anyone seeking a disability pension has to be an active employee. The Trustees have the obligation to maintain the Trust corpus for the benefit of the Participants. For example, a 20 year old gets a job as a longshoreman, puts in his 15 years, quits and works as an auto mechanic for the next 20 year, and then becomes totally and permanently disabled: does the Plan have to pay out a disability pension for this person, or can it preserve the Trust corpus for the active Participants? The Trustees, reasonably they believe, prefer to preserve the Trust corpus for the active Participants and, if it is not clear from the Plan's definitions already, interpret the Plan (as they have the clear discretion to do) to achieve that result. This also is not a determination unique to this case, see AR 71, and thus the Trustees still merit a deferential standard on this issue.

Finally, the arbitrator, who has the final say on Trustee deadlocks, instructed the Trustees to consider whether or not the Plaintiff became "'totally and permanently disabled' while still an employee under the BSA/ILA collective bargaining agreement." AR 128. The arbitrator accepted that one had to become totally and permanently disabled while an employee. Notably,

-10-

neither the management nor union Trustees argued in the arbitration, as does the Plaintiff here, that any former employee is eligible for a disability pension if he or she can prove, at any point post-employment, that he or she is totally or permanently disabled.  AR 118-128.

### 5. The Issue Of The Administrative Record

Defendants have no particular objection to Plaintiff's suggested additions to the Administrative Record for purposes of these pending motions.  The Defendants do state, however, that the Administrative Record is supposed to be what was before the Trustees, and perhaps records of their votes and minutes of meetings in which the Plaintiff's case was discussed.  Anything else, such as court pleadings and various letters between counsel, is irrelevant.  Moreover, Plaintiff attempts to have it both ways - he seeks to include such things as the summary plan description ("SPD") and court filings so he can rely upon them even though none of that material was ever before the Trustees, but then seeks to exclude other items such as the actual denial letter which triggers appeal rights under both the Plan and ERISA.  Nevertheless, there is no good or ill done one way or another by their inclusion.

With respect to the issue of cutting off the Administrative Record as the Plaintiff proposes, however, the Plan does object.  The plain fact of the matter is that the Trustees' ultimate determination on Plaintiff's eligibility for a disability pension did not happen until after the eligibility to apply arbitration.  The result of that was for the Trustees to consider the merits of the Plaintiff's disability pension application, and it was denied on a 10-4 vote.  Plaintiff is understandably disappointed by the ultimate result, but that does not mean that the result should be stricken from the Administrative Record.

Nevertheless, even on the truncated record suggested by Plaintiff, the Plan is still entitled to judgment as a matter of law as outlined in #2 and #3 above, regardless of the standard of review applied since all the documents relied upon by the Defendant as outlined above are included in it.

## Conclusion

Thus the Defendant respectfully requests that judgment as a matter of law enter in its favor, and that Plaintiff's Motion be denied.

Respectfully Submitted by
The Defendant
by its attorney

Geoffrey P. Wermuth, BBO #559681
Murphy, Hesse, Toomey & Lehane, LLP
World Trade Center East, 4th Fl.
2 Seaport Lane
Boston, MA 02210
(617) 479-5000

Date: September 12, 2005

### Certificate of Service

I, Geoffrey P. Wermuth, hereby certify that on this 12th day of September, 2005, I served a copy of the foregoing by hand upon counsel of record for the Plaintiff, Robert E. Daidone, Esq., 44 School St., Suite 500, Boston, MA 02108.

Geoffrey P. Wermuth