United States District Court
District of Massachusetts

| | |
|---|---|
| PAUL BARD,<br><br>   Plaintiff,<br><br>  v.<br><br>BOSTON SHIPPING ASSOCIATION -<br>INTERNATIONAL LONGSHOREMEN'S<br>ASSOCIATION PENSION PLAN,<br>a/k/a BSA-ILA PENSION PLAN,<br>a/k/a BSA-ILA TRUST FUND,<br><br>   Defendant. | Civil Action No.<br>04-11946-NMG |

MEMORANDUM & ORDER

GORTON, J.

  Plaintiff, Paul Bard ("Bard"), worked as a crane operator for the Boston Shipping Association ("the BSA") and was a union member of the International Longshoremen's Association ("the ILA") for approximately 30 years. As such, Bard was a participant member of the defendant, a pension plan created by the BSA and the ILA ("the Pension Plan") and administered by a Board of Trustees ("the Board") in accordance with the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Bard has filed a lawsuit against the Pension Plan in which he challenges the Board's denial of disability benefits sought by him and requests a declaration with respect to future

retirement benefits. Currently pending before the Court are cross-motions of Bard and the Pension Plan for summary judgment on the administrative record.[1]

I. **Background**

While employed by the BSA in 1998 and 1999, Bard failed to pass drug and alcohol tests. In 2000, he was referred by BSA's employee assistance program to Lawless & Company ("Lawless") for three visits relating to his psychological condition. On July 23, 2001, the BSA terminated Bard's employment after he failed a third drug and alcohol test. Plaintiff alleges that as of the date of his termination, he was totally and permanently disabled. After terminating his employment with the BSA, Bard obtained medical treatment from several physicians who diagnosed him with psychological disorders, including severe anxiety and depression.

Bard submitted an application for social security disability benefits in November, 2001. Though initially denied, his claim was eventually granted in May, 2003, when an administrative law judge decided that Bard was entitled to disability payments as of July 22, 2001, based upon 1) documentation of his current medical impairment, 2) lack of substantial gainful employment since his termination by the BSA and 3) Bard's averment that his medical

---

[1] Bard has formally filed a Motion for Judgment on the Pleadings and/or the Case Stated and/or Motion for Judgment in Whole or Part. The cross-motion of the Pension Plan is for Judgment as a Matter of Law. Both motions are treated as seeking summary judgment on the administrative record.

condition impaired his ability to work as of the date of termination.

Bard then applied for disability benefits under the Pension Plan which provides that

> [i]n the event that a Participant who has completed fifteen (15) Years of Service becomes totally and permanently disabled, such Participant shall be entitled to a disability benefit.... The Board, upon competent medical evidence, shall be the sole judge of whether a Participant is disabled.[2]

In October, 2003, the Board decided that Bard was ineligible to apply for disability benefits because he had been terminated from employment. After reconsidering that decision in meetings held in January, February and August, 2004, the Board, on each occasion, was unable to decide the eligibility decision by a majority. It consequently submitted the issue to an arbitrator who concluded in March, 2005, that Bard was eligible to apply for disability benefits.

Soon thereafter, the Board reconvened to consider whether Bard should be granted the disability benefits sought. By a 10-4 vote, the Board decided that Bard was not entitled to an award of disability pension benefits because he had not been "totally and permanently disabled" while employed by the BSA. Notwithstanding their decision with respect to disability benefits, the Board confirmed that Bard would "be eligible to apply for a regular

---

[2] A "Participant" is defined as "an Employee who has met the requirements of eligibility to participate in the Plan".

pension on the basis of age when he attain[ed] the appropriate age."

Both parties agree that Bard has exhausted his administrative remedies and seek judgment on the basis of the administrative record.

## II. Discussion

### A. Standard of Review

Benefits decisions made by plan administrators and fiduciaries are subject to de novo review unless the plan provides such decisionmakers "discretionary authority to determine eligibility for benefits or to construe the terms of the plan", Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), in which case "a deferential arbitrary and capricious standard of review" is mandated, Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998) (citation and internal quotation marks omitted). Summary judgment is "simply a vehicle" for deciding ERISA cases and therefore does not affect the court's standard of review. Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005) (citation omitted).

In this case, the Board holds discretionary authority to make eligibility and disability determinations and to interpret the terms of the Pension Plan. Consequently, this Court will not reverse those decisions unless they were arbitrary and capricious.

**B.  Analysis**

As an initial matter, there is some dispute over the scope of the administrative record to be reviewed by this Court.  Bard contends that the Board failed to comply with certain temporal requirements of the Pension Plan thereby estopping the Board from relying upon any materials received after the date of its alleged noncompliance.  Because the Court finds, to the contrary, that 1) there is no evidence of material noncompliance by the Board and 2) in any event, the administrative record proposed by plaintiff does not support his position, the Court will decline to limit its review of the record as Bard requests.

The parties' respective positions are uncomplicated but are stated to the point of exhaustion.  Bard argues that the medical evidence provided to the Board indisputably supports a finding that he was totally and permanently disabled before being terminated by the BSA and that no competent medical documentation indicates otherwise.  Furthermore, plaintiff contends that the Pension Plan should be interpreted to afford disability benefits even to former employees whose disability arose after their employment.

Defendant, in turn, maintains that the Board's decision was reasonable because there is no evidence, contemporaneous with Bard's employment, that he was totally and permanently disabled at that time.  Indeed, the fact that Bard worked until the date

that he was terminated on account of drug and/or alcohol use strongly suggests that he was not suffering from a total disability while employed. In addition, the records of Lawless, whom Bard saw while still employed by the BSA, imply that his psychological difficulties did not constitute a total and permanent medical impairment.

Although the Social Security Administration ("SSA") concluded that Bard was disabled as of July 22, 2001, the Court finds that the Board need not have conclusively relied on that determination in making its own decision under the Pension Plan. The SSA did not consider whether Bard's disability was total and permanent nor, apparently, did it establish the date of disability on the basis of contemporaneous medical information.

In addition, the Court finds that the Board's denial was reasonable given the other materials offered by Bard. Although plaintiff provided documentation of his disability after the date of termination, he did not produce convincing evidence of permanent and total disability prior to that date. As defendant points out, Bard's evidence of disability while employed consists merely of his own self-serving statements and medical opinions that were obtained after he stopped working for the BSA.

For example, in a letter dated November 27, 2002, Drs. De Simone and Chakrabarti, who began treating Bard in March, 2002, state that he has suffered from severe depression since becoming

disabled in December, 2001. In correspondence more than two years later, the same doctors assert that Bard's disability began in March, 2000, but give no justification for the change in their diagnosis. Another physician, Dr. Segal, stated summarily that Bard was permanently disabled prior to his termination on July 23, 2001, but he did not begin treating Bard until October 2, 2001, thereby rendering his opinion suspect. The Board acted reasonably in discounting the competency of such medical evidence and the Court agrees that it was entitled to view that evidence "with a jaundiced eye".

The Court is similarly persuaded by the defendant that the Pension Plan does not provide disability benefits to former employees whose disability arose after the termination of their employment. Even if an ambiguity in the use of the term "Participant" renders the Pension Plan open to Bard's interpretation, that interpretation is illogical. Thus, the Court finds the Board's alternate construction, i.e., that "Participants" seeking disability benefits must have been employed at the time of disability, to be reasonable.

In addition to a finding that the Board wrongfully denied him disability benefits, Bard seeks a declaration concerning his entitlement to future retirement benefits under the Pension Plan. Defendant concedes, as it must given the administrative record and other filings in this case, that Bard is entitled to apply

for retirement benefits under the Pension Plan after he reaches the appropriate age. Consequently, there is no dispute between the parties with respect to the propriety of a declaratory judgment on that issue.

## ORDER

In accordance with the foregoing, Plaintiff Paul Bard's Renewed Motion for Judgment on the Pleadings and/or the Case Stated and/or Motion for Judgment in Whole or Part (Docket No. 15) is **DENIED** and Defendant's Cross-Motion for Judgment as a Matter of Law (Docket No. 16) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: March 16, 2006